**Affirmed and Opinion Filed August 3, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00615-CV

## MARK SCHWARZ, NEWCASTLE CAPITAL MANAGEMENT, L.P., NEWCASTLE CAPITAL GROUP, L.L.C., NEWCASTLE PARTNERS, L.P., AND NEWCASTLE SPECIAL OPPORTUNITY FUND II, L.P., Appellants
## V.
## STEVEN J. PULLY, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-00064**

# MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This is a breach of contract case. Appellee Steven J. Pully sued appellants asserting employment compensation claims and claims concerning his investments in two hedge funds related to his employment. After appellants moved to compel arbitration of Pully's investment claims, he began an arbitration proceeding regarding those claims. The arbitrator made an award favoring Pully. The trial court confirmed that award, and appellants appeal from that order.

Appellants present four issues. The first three issues argue that the trial court erroneously confirmed that award because:

(1) Pully's investment claims arose from an alleged oral employment agreement that did not include an arbitration agreement;

(2) the award benefitted persons who were not parties to the arbitration;

(3) the award is contrary to public policy because Pully, who is a lawyer, violated Texas Disciplinary Rule of Professional Conduct 1.08(a) by entering an oral business transaction with his client.

Appellants' fourth issue argues that the trial court erroneously severed the claims resolved by the arbitration award from Pully's remaining employment claims, thereby producing the final judgment that is the subject of this appeal, because that severance "split a single breach of oral contract claim and severed interrelated defenses and counterclaims from the affirmative claims to which they relate."

For the reasons discussed below, we resolve appellants' issues against them and affirm the judgment.

## I.  BACKGROUND

### A.  Factual Background

The appellants are:

> (i) Two hedge funds, Newcastle Partners, L.P. and Newcastle Special Opportunity Fund II, L.P. ("NSOF");
>
> (ii) Those hedge funds' general partner, Newcastle Capital Management, L.P.;
>
> (iii) Newcastle Capital Management, L.P.'s general partner, Newcastle Capital Group, L.L.C.; and
>
> (iv) Newcastle Capital Management, L.P.'s president and CEO, Mark Schwarz.

Appellee Pully is a Texas lawyer and a CPA. From about December 2001 until October 2007, Pully worked for Newcastle Capital Management as an officer and at times as inside counsel. During that employment, he acquired limited partnership interests in both funds. According to Pully, he also invested in NSOF on behalf of his family members.

Newcastle Partners and NSOF were governed by separate limited partnership agreements. Each such agreement contained an identical arbitration clause providing for the

–2–

arbitration of any dispute arising out of or relating to that agreement, associated subscription agreements, the fund's affairs, or the partners' rights or interest:

> Any dispute, controversy or claim arising out of or relating to this Agreement, the Subscription Agreements or to the Fund's affairs or the rights or interests of the Partners . . . shall be settled by arbitration in Dallas, Texas . . . .

It is undisputed that Pully executed a subscription agreement for each investment whereby he agreed to the limited partnership agreements' terms.

## B.    Procedural History

In January 2008, Pully sued Schwarz, Newcastle Capital Management, and Newcastle Capital Group in the 298th District Court of Dallas County. He later joined Newcastle Partners and NSOF as defendants. In March 2009, Pully filed a second amended petition asserting several claims.[1] His claims focused on two different matters. One, he alleged that his compensation included 10% of Newcastle Capital Management's profits, which he was not paid for 2007. Two, he alleged that appellants breached an agreement to waive performance fees associated with Newcastle Partners. Pully also sought declaratory judgment that appellants could not charge him any performance fees on his NSOF investment.

Appellants later moved to compel arbitration of "all claims relating to the Subscription Agreement and Fund Partnership Agreements," arguing that the agreements' arbitration clauses covered Pully's ninth and tenth causes of action, which were directed at recovering the performance fee Newcastle Capital Management charged Pully in 2007.

Shortly after appellants filed their motion, Pully filed with the American Arbitration Association an arbitration demand against appellants. That demand alleged that "Respondents charged Claimant performance fees in violation of the parties' agreement."

---

[1] Pully also joined another defendant, Geoworks Corporation, in the second amended petition. Geoworks is not a party to this appeal.

An arbitrator later heard Pully's claim and issued an award. That award ruled that Newcastle Capital Management agreed to waive the performance fee, that Pully was entitled to that waiver for the first nine months of 2007, and that Pully was entitled to recover that fee (about $60,000), plus attorneys' fees and expenses. The arbitrator further ruled that Newcastle Capital Management and NSOF "are not to charge Pully and/or his family any performance allocation fee for their investments in NSOF for 2006 and the first nine months of 2007."

Appellants objected to the arbitrator's rulings on Pully's "employment-related claims" and in favor of Pully's family as being "outside the scope of the arbitration agreements and matters that [appellants] agreed to arbitrate." The arbitrator refused to modify the award.

Pully subsequently filed a new petition and motion to confirm the arbitration award. The case was assigned to the 160th District Court of Dallas County. Appellants answered and moved to partially vacate the award.

A few months later, this new case was transferred to the 298th District Court and consolidated with Pully's original suit. The trial court held a hearing, granted Pully's motion to confirm, and denied appellants' motion to partially vacate the arbitration award. This order was interlocutory because Pully's claims based on the failure to pay him 10% of Newcastle Capital Management's 2007 profits remained pending.

The litigation regarding that claim proceeded for two more years until Pully filed a motion to sever the claims resolved by arbitration award from the remaining claims. The trial court granted Pully's severance motion over appellants' objection and signed a final judgment awarding Pully the relief awarded by the arbitrator. Appellants timely appealed.

## II.  APPLICABLE LAW

Appellants assert that this case is governed by the Texas Arbitration Act (TAA), Texas Civil Practice and Remedies Code Chapter 171. They assert alternatively that the result would

–4–

be the same if the Federal Arbitration Act (FAA) applies. Pully takes no position on the question.

The FAA applies to arbitration clauses in contracts that affect interstate commerce. *Fredericksburg Care Co., L.P. v. Perez*, No. 13-0573, 2015 WL 1035343, at *2 (Tex. Mar. 6, 2015). A party seeking to apply the FAA has the burden to show that the contract affects interstate commerce if the arbitration agreement does not specify which act applies. *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 202 (Tex. App.—Fort Worth 2015, no pet.); *cf. Southwind Grp., Inc. v. Landwehr*, 188 S.W.3d 730, 734–35 (Tex. App.—Eastland 2006, no pet.) (applying TAA because record did not show the contract involved or affected interstate commerce). Here, the arbitration clauses do not expressly select either act, neither party affirmatively seeks application of the FAA, and neither party argues that the contracts affect interstate commerce. Accordingly, we apply the Texas Arbitration Act.

### III. ANALYSIS

### A. Standard of Review and Standards for Vacating and Confirming Awards Under the TAA.

We review a trial court's decision to confirm or vacate an arbitration award de novo based upon a review of the entire record. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied).

Under the TAA, a court must confirm an arbitrator's award unless an opposing party establishes a statutory ground for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2011); *Centex/Vestal*, 314 S.W.3d at 683. As relevant here, the TAA authorizes vacatur if (i) an arbitrator exceeds his powers or (ii) if there was no agreement to arbitrate and the opposing party did not participate in the arbitration hearing without raising the objection. *See* CIV. PRAC. § 171.088(a)(3)(A); *id.* § 171.088(a)(4).

An arbitrator's power arises from the arbitration agreement, and that power is limited to deciding the matters either expressly or by necessary implication within the agreement's scope. *Centex/Vestal*, 314 S.W.3d at 684. To determine whether claims are within an arbitration agreement's scope, we examine the agreement's terms and the claim's factual allegations. *Skidmore Energy, Inc. v. Maxus (U.S.) Exploration Co.*, 345 S.W.3d 672, 687 (Tex. App.— Dallas 2011, pet. denied). Any doubts concerning the scope of what is arbitrable under the agreement should be resolved in favor of arbitration. *Id.* That is, an arbitrator has the authority to decide a claim unless it can be said with positive assurance that the arbitration agreement is not susceptible of an interpretation that covers the dispute. *Id.*

**B.      Appellants' First Issue:  Were Pully's performance fee claims outside the arbitration agreements' scope?**

Appellants argue that Pully's performance fee claims were outside the arbitration agreements' scope because the claims arose from Pully's oral employment agreement. Appellants emphasize that Pully argued in a post-arbitration brief that the partnership agreements' obligation to pay those fees did not bar his performance fee claims because his claims were based on a "wholly separate agreement" between Pully and Schwarz. But given the partnership agreements' broad arbitration agreements, we agree with the trial court that Pully's performance fee claims were arbitrable because those claims relate to the partnership agreements.

In so concluding, we first examine the arbitration agreements. Those agreements cover any dispute relating to the limited partnership agreements:

> Any dispute, controversy or claim arising out of or relating to this [limited partnership] Agreement, the Subscription Agreements or to the Fund's affairs or the rights or interests of the Partners  . . . shall be settled by arbitration in Dallas, Texas . . . .

The phrase "relates to" is a very broad term. *In re Wilmer Cutler Pickering Hale & Dorr LLP*, No. 05-08-01395-CV, 2008 WL 5413097, at *4 (Tex. App.—Dallas Dec. 31, 2008, orig. proceeding [mand. denied]) (mem. op.). A claim "relates to" a contract if it has a significant relationship with or touches matters covered by the contract. *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App.—Austin 2006, no pet.).

Next, we review the facts underlying Pully's claims. Pully pled in court that appellants agreed to waive performance fees because he was a Newcastle Capital Management employee. He further alleged that appellants breached this agreement by charging him performance fees when he redeemed his Newcastle Partners investments during 2007. Pully's arbitration demand similarly alleged that "Respondents charged Claimant performance fees in violation of the parties' agreement." Indeed, according to appellants, Pully's alleged duty to pay the performance fees arose from the Newcastle Partners and NSOF limited partnership agreements. Specifically, as appellants asserted in their motion to compel arbitration:

> The [limited partnership] agreements drafted by Pully contain specific provisions which provide for the performance fees and prohibit any attempt to waive them in the manner urged by Pully. The agreements also contain broad arbitration clauses which require arbitration relating to any issue regarding the limited partnership interests. . . .
>
> . . . Pully is required to arbitrate his tenuous claims regarding the performance fees (and any other claims relating to the limited partnership interests) due to the existence of enforceable arbitration clauses that bear directly on them.

Thus, Pully's claims were claims that appellants breached legal duties not to charge him performance fees even though the limited partnership agreements arguably entitled appellants to charge those fees.

Finally, we ask whether Pully's claims had a substantial relationship with or touched a matter covered by the agreements. The agreements here appeared to require Pully to pay performance fees, but Pully denied that he was required to pay those fees. His claims thus

–7–

directly involved the enforceability of one of his obligations under the agreements. Accordingly, his claims related to—that is, had a substantial relationship with and touched a matter covered by—the partnership agreements. Because his claims related to the agreements, the claims were arbitrable, and the arbitrator did not exceed his powers by deciding those claims.

Nonetheless, appellants argue that Pully's performance fee claims were not arbitrable because they were "employment claims" arising from an oral employment agreement that was "wholly separate" from the limited partnership agreements. Appellants further emphasize that the alleged oral employment agreement contained no arbitration clause. But, as we discussed above, the crux of the matter is whether the claims fit within the partnership agreements' arbitration clauses. On this point, appellants assert that those clauses "clearly [do] not apply to *oral employment agreements*." (Emphasis in original.) Appellants' argument misses the point. The arbitration agreements apply to any dispute, controversy, or claim arising out of *or relating to* the limited partnership agreements. As this case illustrates, a claim can relate to more than one agreement. In his claims, Pully argued that a different agreement changed his and appellants' rights and obligations under the limited partnership agreements, and that appellants breached their legal duties when they charged him fees under the partnership agreements. So his claims related to the partnership agreements, and the arbitrator had the power to determine them.

We thus overrule appellants' first issue.

**C.      Appellants' Second Issue:  Did the arbitrator exceed his powers by awarding relief to persons who were not parties to the arbitration proceeding?**

Appellants next argue that the arbitrator exceeded his powers by awarding relief to nonparties (namely, Pully's family members), or alternatively that the trial court erred by confirming the award in favor of persons not before the court. They base their argument on this sentence in the arbitration award:

I further find that NCM and NSOF are not to charge Pully and/or his family any performance allocation fee for their investments in NSOF for 2006 and the first nine months of 2007.

Pully responds that appellants' second issue is moot because NSOF made its distributions to Pully and his family after the arbitrator made his award, and appellants charged them no performance fees since the NSOF funds did not appreciate enough to trigger such fees.[2]

We conclude that appellants' second issue is moot for these reasons:

First, we accept as true Pully's unchallenged factual assertion that he and his family have received their investment distributions from NSOF and were not charged any performance fees because the investments did not appreciate sufficiently to warrant the fees. Although appellants' reply brief addressed Pully's mootness argument, they did not dispute the accuracy of his factual assertion. So we may accept Pully's assertion as true. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated [in appellant's brief] unless another party contradicts them."); *Redman v. Bennett*, 401 S.W.2d 891, 896 (Tex. Civ. App.—Tyler 1966, no writ) (accepting uncontradicted assertion in appellee's brief as true).

Second, an issue is moot if a party seeks a judgment (i) on a controversy that does not really exist, or (ii) that when rendered cannot have any practical legal effect on a then-existing controversy. *Seals v. City of Dallas*, 249 S.W.3d 750, 754 (Tex. App.—Dallas 2008, no pet.). Under this test, appellants' second issue is moot. Appellants contend that the arbitrator and the trial court should not have ordered them not to charge performance fees to Pully's family. But now appellants have cashed out Pully's family's investments without charging performance fees, and appellants do not dispute that they could not have charged Pully's family any performance fees even under appellants' theory of the case. Thus, whether appellants are entitled to charge

---

[2] Pully also argues that the arbitrator had jurisdiction over both his and his family's claims, and that any error was harmless. We need not address these arguments.

Pully's family the performance fee is no longer a live controversy, and our resolution of that issue would have no practical legal effect. *See Univ. Interscholastic League v. Jones*, 715 S.W.2d 759, 760–61 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (appeal from injunction allowing student to play high school football was moot because season was over and student had graduated).

Finally, appellants' reply brief argues that we must vacate the trial court's judgment and dismiss the case if Pully's mootness argument is correct. This is the general rule when an entire case becomes moot. *See, e.g.*, *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.—Dallas 2010, no pet.) ("If a case is moot, the appellate court is required to vacate any judgment or order in the trial court and dismiss the case."). But here the entire case is not moot; only appellants' second issue is moot. When a single issue becomes moot, we dismiss only that issue. *See Seals*, 249 S.W.3d at 755 (dismissing as moot one of appellants' nine issues). Accordingly, we dismiss appellants' second issue as moot.

**D.     Appellants' Third Issue:  Is the arbitrator's award void because it enforces an agreement that violates Texas public policy?**

**1.     Applicable Standards**

Appellants next argue that the arbitrator's award is void because it enforces an oral agreement (to waive performance fees) that violated Texas Disciplinary Rule of Professional Conduct 1.08(a) and therefore violated Texas public policy. The TAA, however, does not list public policy as a ground for vacating an arbitration award. *See* CIV. PRAC. § 171.088.

But, at common law, an arbitration award based on a claim arising from an illegal transaction was void and unenforceable. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 237 (Tex. 2002) (relying on *Smith v. Gladney*, 98 S.W.2d 351 (Tex. 1936)). In *CVN Group*, the supreme court assumed without deciding that the TAA does not preempt this common law ground for vacatur. *Id*. at 238. If there is a public policy ground for vacatur, the supreme court concluded,

–10–

an arbitration award can be set aside only "in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy." *Id*. at 239. To that end, the policy advanced must reference "'laws and precedents' rather than 'general considerations of proposed public interests.'" *Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 413 (Tex. App.—Dallas 2007, no pet.) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)). Furthermore, courts may not re-examine an arbitrator's decision whether a particular obligation is of the sort that is legally unenforceable. *See id*. at 238.

For example, in *CVN Group*, the Delgados argued that an arbitrator violated public policy by wholly disregarding Texas's constitutional and statutory requirements to perfect a mechanic's lien on a homestead. *Id*. at 239. The supreme court agreed that such total disregard would violate public policy, but it rejected the Delgados' argument that such disregard had occurred. *Id*. Rather, the question of compliance with the requirements was arbitrated, and the arbitrator decided that question against the Delgados. *Id*. Nothing in the record indicated that the arbitrator had completely disregarded the requirements for lien perfection, so the court held that the arbitrator's ruling could not be disturbed on public policy grounds. *Id*. at 239, 243.

As occurred in *CVN Group*, Pully does not challenge whether the statutory grounds for challenging an arbitration award, which do not expressly include the common law public policy exception, *see* CIV. PRAC. § 171.088, preempt this common law exception. Thus, for purposes of this appeal, we assume without deciding that the public policy exception applies. *See CVN Grp.*, 95 S.W.3d at 239.

### 2. Application to this Case

Appellants base their public policy argument on Texas Disciplinary Rule of Professional Conduct 1.08(a), which provides that lawyers may not enter into business deals with their clients unless certain client safeguards exist:

(a)  A lawyer shall not enter into a business transaction with a client unless:

（1)  the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client;

(2)  the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3)  the client consents in writing thereto.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013).  According to appellants, they adduced uncontroverted expert testimony at the arbitration hearing that the alleged oral agreement for the waiver of performance fees was an attorney–client transaction that violated all three prongs of Rule 1.08(a).  This, they contend, satisfies the purported public policy ground for vacatur.  Pully disagrees.

We are not persuaded by appellants' third issue for several reasons:

Initially, assuming without deciding that Rule 1.08(a) establishes a carefully articulated and fundamental Texas public policy, based on law and precedent rather than general consideration of proposed public interests, we agree with Pully that appellants' expert did not establish that the alleged oral waiver of performance fees presents an extraordinary case in which the award clearly violated Rule 1.08(a).  A comment to the rule provides that the rule does not apply to transactions that the client routinely engages in with other persons:

[Rule 1.08(a)] does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others such as banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services.  In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08 cmt. 2.  These non-exclusive examples are similar to the professional employment agreement in this case.

Furthermore, at the arbitration hearing, Pully adduced evidence, including his own testimony and third-party affidavits, that hedge funds commonly waive fees for their employees

–12–

who invest in their funds, that this waiver is a standard fringe benefit for employees, and that it would be unusual for a hedge fund to charge employees a performance fee or a performance allocation. Given this evidence, we conclude that appellants did not establish that the oral waivers involved in this case *clearly* violated Rule 1.08(a).

Additionally, appellants' expert testified on cross-examination that Rule 1.08(a) applies only if Pully was acting as a lawyer when he negotiated the performance fee waiver with Schwarz. The expert added her conclusion that Pully was so acting. But, as the following examples show, the evidence on this point did not present a case in which the award clearly violates Rule 1.08:

(1) Pully testified that he talked to Schwarz, and Schwarz agreed to waive the performance fees, in 2003, after Pully had become Newcastle Capital Management's president. This evidence suggests Pully may not have been acting as a lawyer when he and Schwarz agreed to the waiver.

(2) Pully also testified that he had a conversation with Schwarz about waiving the performance fees in 2006, before Pully invested funds in NSOF.

(3) Although Pully's deposition testimony read at the arbitration hearing stated that "there were probably some very limited situations" in which he provided legal services as part of his employment with the general partner (Newcastle Capital Management), and Pully was Newcastle Capital Management's senior legal executive from 2003 through February 2006, Pully's Newcastle business cards never listed him as legal counsel.

(4) Pully also testified that another person was hired as "Vice-President Legal" in April or May 2006, and Pully was "trying to really move away from any legal work."

In sum, the record does not clearly show that Pully was acting in his capacity as attorney for Schwarz when they reached the alleged oral agreements about waiving performance fees. Thus, the evidence does not establish that the alleged oral agreements clearly violated Rule 1.08(a).

Finally, this case is distinguishable from *Lee v. Daniels & Daniels*, 264 S.W.3d 273 (Tex. App.—San Antonio 2008, pet. denied), on which appellants rely. In *Lee*, a law firm arbitrated, and prevailed on, a fee claim against a former client and his guarantor. *Id*. at 276–77. The court

–13–

of appeals held that the trial court erred in part by confirming the award, concluding as a matter of law that part of the fees sought by the law firm were unconscionable and therefore against Texas public policy. *Id*. at 279–81. Specifically, the evidence established that the arbitrator awarded the law firm all the fees that the firm had incurred in its efforts to withdraw from the representation, even though the firm was adversarial to the client for part of that time. *Id*. at 281. Here, however, the arbitration record did not clearly establish that the arbitrator enforced an agreement that violated a disciplinary rule. Thus, *Lee* is not persuasive.[3]

For the above reasons, we overrule appellants' third appellate issue.

**E.      Appellants' Fourth Issue:  Did the trial court abuse its discretion by severing the case?**

Appellants' fourth issue posits that the trial court abused its discretion by severing the arbitration award claims from Pully's unpaid compensation claims. But appellants condition their fourth issue on our reversing the judgment confirming the arbitration award. Specifically, at the beginning of their argument, appellants state, "In the event the arbitration award is reversed and vacated and the severed cause is remanded to the trial court, the severance order should also be vacated to avoid separate trials on interwoven claims, counterclaims, and defenses involving the same facts and legal issues." Appellants do not argue that we should reverse the severance if we affirm the judgment confirming the arbitration award. Accordingly, because we affirm the judgment confirming the arbitration award, we do not address appellants' fourth issue.

---

[3] Appellants also urge that *Cruse v. O'Quinn*, 273 S.W.3d 766 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), supports vacatur of the arbitration award on public policy grounds, but *Cruse* did not involve an arbitration award or Rule 1.08(a).

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

140615F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK SCHWARZ, NEWCASTLE
CAPITAL MANAGEMENT, L.P.,
NEWCASTLE CAPITAL GROUP, L.L.C.,
NEWCASTLE PARTNERS, L.P., AND
NEWCASTLE SPECIAL OPPORTUNITY
FUND II, L.P., Appellants

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-00064.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers
participating.

No. 05-14-00615-CV        V.

STEVEN J. PULLY, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Steven J. Pully recover his costs of this appeal and the full
amount of the trial court's judgment from appellants Mark Schwarz, Newcastle Capital
Management, L.P., Newcastle Capital Group, L.L.C., Newcastle Partners, L.P., and Newcastle
Special Opportunity Fund II, L.P. and from the cash deposit in lieu of bond.  After all costs and
the full amount of the judgment have been paid, the clerk of the district court is directed to
release the balance, if any, of the cash deposit in lieu of bond to appellants Mark Schwarz,
Newcastle Capital Management, L.P., Newcastle Capital Group, L.L.C., Newcastle Partners,
L.P., and Newcastle Special Opportunity Fund II, L.P.


Judgment entered August 3, 2015.