ACCEPTED
13-15-00312-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/22/2015 5:09:10 PM
Dorian E. Ramirez
CLERK

NO. 13-15-00312-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
10/22/2015 5:09:10 PM
DORIAN E. RAMIREZ
Clerk

BRIAN O'GRADY, M.D. AND
THE O'GRADY FAMILY PARTNERSHIP, LTD.
*Appellants*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
P.A.,
*Appellee*.

Appealed from the 53rd District Court of Travis County, Texas

APPELLANTS' BRIEF IN REPLY TO APPELLEE'S BRIEF

RICHIE & GUERINGER, P.C.
SHELDON E. RICHIE
State Bar No. 16877000
EMILY J. SEIKEL
State Bar No. 24072331
100 Congress Avenue, Suite 1750
Austin, Texas 78701
512-236-9220 telephone
512-236-9230 facsimile
srichie@rg-austin.com Email
eseikel@rg-austin.com Email
ATTORNEYS FOR APPELLANTS

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................2

INDEX OF AUTHORITIES...........................................................3

STATEMENT ON ORAL ARGUMENT ...............................................5

STATEMENT ON ADMISSIONS BY APPELLEE SUPPORTING
APPELLANTS' POSITION ...........................................................6

STATEMENT ON THE EVIDENCE FROM THE UNDERLYING FINRA
ARBITRATION ........................................................................7

SUMMARY OF ARGUMENT IN REPLY TO APPELLEE............................13

ARGUMENT IN REPLY ............................................................14

APPELLEE'S RESPONSE BRIEF MISCHARACTERIZES
APPELLANTS' ARGUMENT ........................................................21

   1. APPELLANTS' ARGUMENT IS NOT THAT SUMMARY
      JUDGMENT WAS IMPERMISSIBLE..................................21

   2. APPELLANTS' ARGUMENT IS NOT ABOUT "IMAGINED
      RESTRICTIONS" ON THE SUMMARY JUDGMENT
      EVIDENCE...............................................................22

APPELLEE PRESENTS NO APPLICABLE CASE LAW ............................24

THE PANEL EXCEEDED ITS AUTHORITY AND MADE
IMPROPER FACT-FINDINGS AND CREDIBILITY
DETERMINATIONS .................................................................30

PRAYER ..............................................................................34

CERTIFICATE OF COMPLIANCE .................................................36

CERTIFICATE OF SERVICE .......................................................37

# INDEX OF AUTHORITIES

**Cases**

*American Automobile Ins. Co. v. Grimes*,
2004 WL 246989, *4 (N.D. Tex. 2004, no pet.).......................................................33

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................11

*Brockman v. Tyson*,
No. 01-03-01335-CV, 2005 WL 2850128 (Tex.App.—Houston [1st Dist.] Oct. 27, 2005)..................................................................................................................27

*Brooks v. BDO Seidman, LLP*,
917 N.Y.S.2d 842 (N.Y. Sup. Ct. 2011) ...................................................................26

*C. Melchers, GmbH & Co. v. Corbin Associates, LLC*,
No. 1:05-CV-349, 2006 WL 925056 (E.D. Tenn. Apr. 7, 2006) ..............................28

*Calhoun v. Killian*,
888 S.W.2d 51 (Tex.App.—Tyler 1994, writ denied) ...............................................34

*Campbell v. Am. Family Life Assur. Co. of Columbus, Inc.*,
613 F.Supp.2d 1114 (D. Minn. 2009)........................................................................27

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1896) ............................................................................................ 10, 11

*Centex/Vestal v. Friendship West Baptist Church*,
314 S.W.3d 677 (Tex.App.—Dallas 2010, pet. denied)................. 17, 19, 21, 27

*Chem-Met Co. v. Metaland Int'l, Inc.*,
No. 96-02548, 1998 WL 35272368 (D.D.C. Mar. 25, 1998) ...................................29

*Cobb v. TDCJ*,
965 S.W.2d 59 (Tex.App.—Houston 1st Dist.] 1998, no writ) ................................33

*Grand Homes 96, L.P. v. Loudermilk*,
208 S.W.3d 696 (Tex.App.—Fort Worth 2006, pet. denied) ...................................19

*InterCarbon Bermuda, Ltd. v. Caltex Trading and Transport Corporation*,
146 F.R.D. 64 (S.D.N.Y. 1993) .................................................................................12

*Johnson v. Diversicare Afton Oaks, LLC*,
  597 F.3d 673 (5th Cir. 2010) ......................................................................33

*Leshin v. Oliva*,
  No. 04-14-00657-CV, 2015 WL 4554333
  (Tex.App.—San Antonio July 29, 2015, no pet. h.) .................................. 20, 21

*Schlessinger v. Rosenfeld, Meyer & Susman*,
  47 Cal. Rptr. 2d 650 (Cal. Ct. App. 1995) .......................................................27

*Schuster v. Wild*,
  No. 13-13-00474-CV, 2015 WL 251564
  (Tex.App.—Corpus Christi, Jan. 15, 2015, pet. denied).................... 17, 18, 21

*Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC*,
  260 F.App'x 497 (3d Cir. 2008) .....................................................................25

## Rules

FED. R. CIV. P. 56 ...................................................................................... 10, 22

TEX. R. CIV. P. 166a.............................................................................. 10, 11, 22

## Constitutional Provisions

U.S. CONST. amend. V ...................................................................................11

U.S. CONST. amend. VII..................................................................................11

U.S. CONST. amend. XIV ...............................................................................11

## STATEMENT ON ORAL ARGUMENT

Appellants here re-iterate their request for oral argument. This case raises issues that have implications for arbitrations across the country. It concerns the role of summary judgment in arbitration proceedings and the arbitrators' scope of discretion in procedure and jurisprudence, as well as their duty to protect the parties' right to due process. This case begs questions about the parties' right to discovery, the parties' right to evidentiary hearings, and the parties' right to present their case fully and fairly in an arbitration setting. The precedent on these issues is far from clear, as is evident by the scarcity of case law directly applicable to this case. Despite the scarcity of case law, this case presents a situation that is undeniably common and widespread – that is, where an arbitration award seems to lie outside of legal authority and beyond the scope of the parties' agreement, and leaves a party with the sense that they have been denied some basic right to fully air and present their case, without their consent.

## STATEMENT ON ADMISSIONS BY APPELLEE SUPPORTING APPELLANTS' POSITION

In its Response Brief, Appellee makes extraordinary admissions that the Panel of AAA arbitrators "**agreed**" with Appellee on disputed facts, "**determined**" disputed facts and "**therefore**" – based on those fact-findings on disputed facts – entered a summary judgment finding that "the Asset Protection Plan was not approved by or distributed through Woodbury, and **therefore** does not meet the Policy's Professional Services Requirement . . . ." Appellee's Resp. Brief p. 4 [emphasis added]. The Appellee admits that the Panel made fact-findings, and that those very fact-findings resulted in a summary judgment ruling that the Asset Protection Plan was excluded from coverage.[1] Appellee's admission mimics the Panel's telling language in its Final Summary Judgment, where the Panel stated its fact-finding that "**because** Woodbury neither approved nor distributed" the products, **[h]ence** . . . [the agents] . . . did not perform "professional services" . . . and the Policy does not cover the Award."[2] Meanwhile, a careful reading of the unreasoned FINRA Award absolutely establishes that the FINRA panel did not make findings regarding approval or distribution, or lack thereof, of the Asset Protection Plan – in fact, FINRA panel did not address any issues pertinent to

---

[1]    CR:    251 – 253 [Final Summary Award].
[2]    CR:    251 – 253, 252 [Final Summary Award].

6

Woodbury at all, as, because of settlement, "the panel did not adjudicate **any** claims against Woodbury . . . ."[3]

## STATEMENT ON THE EVIDENCE FROM THE UNDERLYING FINRA ARBITRATION

The parties agreed to use summary judgment at the outset of the insurance coverage arbitration, and did so *prior* to engaging in any discovery. The Panel's task at the summary judgment phase was to assess which claims could be decided as a matter of law at that juncture, based on the face of the FINRA Award and the Policy. Both sides, in agreement, drew from the documentary evidence and testimony in the underlying FINRA proceeding to inform the Panel in their task. Both sides also drew from the underlying proceeding to demonstrate the existence of genuine issues of material fact on certain claims. The underlying FINRA proceeding was not, however, intended to replace discovery or an evidentiary hearing on disputed facts relevant to a determination of the insurance dispute. Had that been the case, the parties would have simply proceeded straight to a full arbitration on the merits on all claims, and would not have called it a "summary judgment." Rather, as the parties agreed, the "summary judgment" portion of the trial was to occur *prior* to discovery in order to narrow the viable claims in the

---

[3]     CR:     145 – 157, at 151, 152 [FINRA Award].

insurance dispute. The parties were to then proceed to discovery on those issues that remained after summary judgment.[4]

Each side proceeded to do just as they had agreed – to advocate for, and against, the cross summary judgment motions, while referring to information from the FINRA proceeding to inform the Panel's understanding of the FINRA Award. Both sides submitted summary judgment briefing with attached exhibits culled from the FINRA proceeding. A one-day summary judgment hearing then took place that did not include live testimony or submissions of evidence. The argument of counsel is not, of course, the equivalent of evidence or testimony.

Given the nature of the summary judgment and the fact that it took place prior to any discovery, it would have been within the authorized powers of the Panel to come to certain conclusions by summary judgment. For example, the Panel was within its power when it made its finding that AIG is neither an insurer nor a party to the Policy, as that finding could be gleaned from the face of the Policy and there were no disputed facts on the issue. By further example, the Panel

---

[4]     Appellee's discussion of Appellants' alleged misuse of the term 'bifurcate' is irrelevant to the merits of Appellants' arguments. Appellants used the word "bifurcate" to denote that the arbitration was to have an initial summary judgment phase, followed by discovery and a trial on the merits of the remaining claims. The Merriam-Webster Dictionary defines "bifurcate" as "to cause to divide into two branches or parts." Appellants' use conforms to that meaning. To the extent that the Court agrees with the Appellee's assertion that, in the legal world, "bifurcate" is used in a more specific way to refer to the severance of adjudication of, for example, guilt apart from punishment, or liability apart from damages, then Appellants reply that their use of the word "bifurcate" (1) was intended to mean a simple division of the proceedings into two parts, and was not intended to denote some sort of severance of matters in this case, and (2) such an argument over semantics is irrelevant to this appeal.

8

could have found no coverage for the investment product called the Art Purchase Agreement. The Panel could have found no coverage for the Art Purchase Agreement because (1) the Policy contains an Art Exclusion[5], and (2) no party disputed the fact that the unreasoned FINRA Award concerned liability of three investments, one of which was called the "Art Purchase Agreement." The Panel could have then looked to an explanation of damages that had been provided to FINRA, and that was also provided to the Panel,[6] in order to parse out how much of the FINRA Award should be carved out as damages from the Art Purchase Agreement.

The Panel, looking at the FINRA Award and the Policy while informed by undisputed facts from the underlying FINRA proceeding, could also, for example, have found the Policy provided coverage for the Asset Protection Plan based on a Wrongful Act in the performance of or failure to perform Professional Services. This is because (1) the FINRA Award found liability against Miller and Schulick for gross negligence and the Texas Securities Act (2) the Policy listed Miller and Schulick as covered agents[7], (3) the Policy defined "Wrongful Acts" as "any actual or alleged negligent act, error, or omission," and (4) "Professional Services" is defined, in part, as services rendered with respect to securities and investment

---

[5]    CR:    12 – 95, at 46 Endorsement #12, (x)(1) [Woodbury Insurance Policy].

[6]    CR:    280 (Damages Model attached as Exhibit F to Motion to Vacate Award); *see also* CR:    footnote 2 at CR 131 (discussion of the use of the Damages Model in Motion to Vacate Award).

9

products available for sale through Woodbury.[8]   The Panel could have been informed by the undisputed fact that the Asset Protection Plan exclusively sold Woodbury/The Hartford products to inform its understanding of what the FINRA Award mentioned as "low-risk conservative investments" and "unspecified mutual funds."[9]   It would have been within the authorized powers of the Panel to have then made a summary judgment finding of coverage for the Asset Protection Plan. The remaining claims on which there were disputed facts – such as dishonesty – would have then proceeded to discovery and a full evidentiary hearing; instead, discovery on the insurance coverage issues and a full evidentiary hearing on those matters never occurred.   For example, discovery could have proceeded into the issue of Woodbury's involvement in the other investment products three years later, as well as into questions on the intent and honesty of Miller and Schulick. Moreover, even had Appellants been wholly successful at summary judgment, Appellants would still have pursued discovery on their bad faith claims against National Union.

Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1896); FED. R. CIV. P. 56 (a), (c); TEX. R. CIV. P. 166a.  Summary judgment is

---

[8]     CR:    12 – 95, at 40 Endorsement #7, and 41 Endorsement #8 [Woodbury Insurance Policy].
[9]     CR:    145 – 157, at 150 [FINRA Award].

proper if the movant shows that there are no genuine disputes of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; FED. R. CIV. P. 56.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1896).

Appellants acknowledge that in summary judgment proceedings there is often one side that believes the essential facts are uncontested, while the other side disagrees. The standard for making a determination of whether a "genuine issue as to any material fact" exists has been stated in federal procedure to be whether "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Seventh Amendment provides a constitutional right to a trial by jury, and that such right "shall be preserved" and inhibits courts from overturning certain findings of fact by a jury. U.S. CONST. amend. VII. The due process clauses of the Fifth and Fourteenth Amendments also provide that no on shall be "deprived of life, liberty or property without due process of law." U.S. CONST. amend. V and U.S. CONST. amend. XIV. Essentially, through summary judgment procedure, a court is deciding whether or not the case should be dismissed *before* the jury hears the case. And, in summary judgments *prior* to discovery, the determination is whether it should be dismissed *before* the facts are even fleshed out, such as where the basis for the claim is legally untenable. Such considerations are weighty, and informed by our constitutional rights.

11

These constitutional rights also inform the right of parties in AAA arbitration to receive a "fundamentally fair hearing." *InterCarbon Bermuda, Ltd. v. Caltex Trading and Transport Corporation,* 146 F.R.D. 64, 72 (S.D.N.Y. 1993). Appellants were denied a fundamentally fair hearing because they were not permitted to fully air issues specific to the insurance coverage dispute, nor to even conduct discovery on them. Had Appellants been aware at the time that the Panel would co-opt the summary judgment hearing into a setting in which they made credibility determinations and fact-findings over disputed facts (and facts upon which no discovery had been conducted), Appellants would not have agreed to summary judgment, or would have held it only *after* a discovery period in the insurance dispute. The FINRA proceeding did not concern or address many of the issues specific to the insurance dispute – including but not limited to Woodbury approval and distribution of the products, Woodbury oversight of its agents, the agents' disclosures to Woodbury, and the agents' intent and honesty.[10] The facts

---

[10] Any discussion of Woodbury approval in the underlying FINRA proceeding was not fully aired (Woodbury settled and withdrew mid-way through the seven day proceeding) and there was no finally adjudicated finding on Woodbury (the FINRA Award explicitly omitted Woodbury). Most essentially, however, is that any information on Woodbury 'approval' in the FINRA proceeding is wholly irrelevant to the question of insurance coverage, because it all went to the legal theory of vicarious liability in the heavily regulated brokerage industry. Vicarious liability is a wholly different legal concept and involves different elements and considerations than those that go into interpretation of the Policy as a whole and its various terms, such as the meaning of the "Professional Services," "distributed," and "approved" as well as the defined term "Approved" specific to Endorsement #8. National Union even acknowledged as such to the AAA Panel and stated that "Miller and Schulick's apparent authority and Woodbury's failure to supervise

specific to the coverage dispute had not yet been fleshed out, as *no* discovery had taken place. The Panel acted beyond their authorized power by making fact-findings at summary judgment on issues that were under heavy dispute and that had not been aired through discovery or live testimony.

## SUMMARY OF ARGUMENT IN REPLY TO APPELLEE

The non-existence of a record is not fatal to Appellants' particular *excess of powers* argument in this case. None of Appellee's case law for that proposition is applicable and did not involve, as here, summary judgment prior to discovery. Appellants' argument is not rooted in whether the finding was *correct* based on the evidence, but is rooted whether the Final Summary Award's findings were *authorized* at the summary judgment stage, based on the function of summary judgment to resolve claims as a matter law. Moreover, it is impossible to produce a record of a trial that never occurred – and never occurred due to the Panel's conduct in *excess of powers* at the summary judgment stage. Such a requirement is not the law and is an impossibility.

Appellee mischaracterizes Appellants' arguments on multiple fronts. First, as previously stated by Appellants many times, summary judgment was agreed upon and Appellants are not arguing that it was impermissible. Thus, Appellee's extensive case law briefing on this issue is moot. Second, Appellants do not urge

---

. . . are irrelevant to whether Miller and Schulick were rendering Professional Services as defined by the policy." CR 256 [National Union Post-Hearing Letter Brief].

any 'imagined restrictions' on the summary judgment procedure – the complaint is that the Panel acted *beyond* the scope of summary judgment. The Panel *was* permitted to dispose of claims at summary judgment, but only as to those that could be made as a matter of law, without the existence of disputed material facts. Such a finding was simply impossible as to certain matters which had not been previously adjudicated, had not been explored in discovery, had not been aired through testimony or evidence, and were under dispute. Specifically, the Panel was not permitted to make fact-findings and credibility determinations on essential issues specific to insurance coverage that had <u>not</u> been considered or adjudicated by FINRA (such as Woodbury approval as well as dishonesty or intent), on which the parties had not yet conducted discovery, on which there had been <u>no</u> testimony, and which the parties made very clear to the Panel were under serious dispute.[11] None of the case law pointed to by Appellee is on point with the instant case.

The Court has before it all the evidence it needs in order see that the Panel made fact-findings and credibility determinations on heavily contested factsxc at the summary judgment phase, and to hold that the Panel acted in excess of its authority when it did so and that the Final Summary Award must be vacated.

## ARGUMENT IN REPLY

**The Non-existence of a Record does Not Defeat Appellants' Arguments**

---

[11] CR: 256 – 278 [Post-Hearing Letter Briefs].

14

Appellee's argument that Appellants have somehow waived the ability to appeal based on a lack of a complete record is incorrect. No such underlying record is in existence because the Panel's improper and premature disposal of the entire dispute at summary judgment pre-empted the parties from proceeding to discovery on the insurance dispute and a full evidentiary hearing on the merits with live testimony. A one-day summary judgment hearing did take place, at which competing summary judgment motions were argued, and the Panel was tasked to decide which claims, if any, could be decided as a matter of law at that point. A court reporter was not present for the summary judgment hearing and no transcript exists. After the hearing, the Panel issued a Final Summary Award that was in excess of their authorized powers at the summary judgment phase because it made clear fact-findings and judgments of credibility, and did so prior to any a coverage-specific discovery, any evidentiary hearings, or a trial on the merits.

Appellants have designated all of the evidence that is required to establish their specific *excess of powers* basis for vacating the award in this case. Appellants do not argue that the panel ruled incorrectly – if that was Appellants' argument, then Appellee would be correct that a complete record would be needed to assess the correctness or incorrectness of their ruling, and any missing part of the record would be presumed to support the award. Instead, Appellants urge that the Panel acted in contravention of the basic principles of the agreed-upon summary

15

judgment mechanism. The only evidence needed to demonstrate this has been provided in the appellate record, which includes:

- The FINRA Award[12]
  - A <u>non-reasoned</u> award that did not distinguish between the three investment products that were at issue in the FINRA arbitration, and that did <u>not</u> include any finding or discussions regarding Woodbury or regarding fraud, dishonesty or intent
- The Insurance Policy[13]
  - Providing "Coverage B" of damages and defense costs arising from an insured agent's "Wrongful Acts" in the performance of or failure to perform "Professional Services"[14]
  - Wrongful Acts are defined as "any actual or alleged negligent act, error, or omission . . . ."[15]
  - Professional Services are defined[16] and includes services rendered or required in the sale of securities or other investment products "approved by and distributed through" Woodbury,[17] as well as consultation and services on investment products offered for sale through Woodbury[18]
  - Carving out a Dishonesty Exclusion for "actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent act"[19]
- The AAA Panel's Case Management Order[20]
  - Providing a briefing schedule and hearing date for Motions for Summary Disposition, and <u>notably</u> omitting any matters on discovery specific to the coverage dispute or pre-trial scheduling
- Post-Hearing Trial Brief[21]

---

12  CR:  145 – 157 [FINRA Award].
13  CR:  12 – 95 [Woodbury Insurance Policy].
14  CR:  12 – 95, at 14-16, 18-19 [Woodbury Insurance Policy].
15  CR:  12 – 95, at 22 [Woodbury Insurance Policy].
16  CR:  12 – 95, at 21, 39 - 42 [Woodbury Insurance Policy].
17  CR:  12 – 95, at 21, 40 Endorsement #7 [Woodbury Insurance Policy].
18  CR:  12 – 95, at 21, 41 Endorsement #8 [Woodbury Insurance Policy].
19  CR:  12 – 95, at 22 [Woodbury Insurance Policy].
20  CR:  310 [AAA Case Management Order #1].
21  CR:  313 – 320 [Post-Hearing Brief in Reply to National Union].

- o Demonstrating the <u>existence of disputed issues of material facts</u>, as more fully discussed later in the Brief
- The Final Summary Award[22]
  - o Finding that Woodbury "neither approved nor distributed" the investment products at issue, and "**hence**" the agents Miller and Schulick "did not perform 'professional services' as defined by the Policy"
  - o Finding further that the FINRA Award's assessment of punitive damages "constitutes 'dishonest, malicious, [or] knowingly wrongful' acts"

The appellate record provides the requisite evidence to demonstrate that the Panel made certain leaps of fact-finding – impermissible at the summary judgment phase of the proceeding – in order to render their decision, and whether they acted in *excess of powers* by their summary judgment findings in the Final Summary Award.

Where the complaint is that the panel acted in excess of its authority, an appellate court's review "focuses on the <u>integrity</u> of the process, not the <u>propriety</u> of the result." *Schuster v. Wild*, No. 13-13-00474-CV, 2015 WL 251564, at *3 (Tex.App.—Corpus Christi, Jan. 15, 2015, pet. denied) (citing *Centex/Vestal*, 314 S.W.3d at 683). The integrity of the process is precisely what this appeal for vacatur is about.

None of the case law cited by Appellee is on point with the instant situation – that is, where the basis for vacatur is *excess of powers,* and no record exists because the case was summarily disposed of after a summary judgment hearing.

---

[22]     CR:     251 – 253 [Final Summary Award] [emphasis added].

Appellee cites *Schuster* for its proposition that the non-existence of a complete record bars Appellants' from proving their *excess of powers* arguments. *Schuster v. Wild*, No. 13-13-00474-CV, 2015 WL 251564 (Tex.App.—Corpus Christi, Jan. 15, 2015, pet. denied). However, the reliance is incorrect. First, *Schuster* did not involve summary judgment. Second, in that case, there were three arguments for *excess of powers*, and a close reading will demonstrate that, in order to determine the *first* basis for *excess of powers* – i.e., that the arbitrator allegedly failed to consider and rule on all of the issues ordered by the trial court – the reviewing court simply reviewed the award and made its determination that all claims had been addressed based on its language. 2015 WL 251564 at *4. The instant case is similar in that Appellants ask this Court for a similar review of <u>documents</u> (as compared to 'evidence' presented) to review their *excess of powers* argument. *Schuster's* <u>other</u> two bases for excess of powers – regarding the award of attorneys' fees and of mineral rights – were in actuality questions of <u>fact</u> and the *excess of powers* arguments were essentially that the arbitrator made a mistake or was incorrect, and such a determination is of the type that requires a complete record. *Id.* at *5. Again, *Schuster* did not involve summary judgment, but instead involved a two-day evidentiary hearing airing the full merits, and much of the challenger's argument was about the propriety of an award of attorneys' fees and of mineral rights in the dispute. Thus, the argument was essentially about the

correctness of conclusions made based on evidence aired at trial. In contrast, the basis for Appellants' *excess of powers* argument turns on the tenets of summary judgment, and whether the Panel overstepped its bounds at summary judgment – before *any* discovery and before a hearing on the full merits of the insurance coverage dispute could even take place.

As such, the determination in this case can, and must, be made with the existing record. Appellee is correct that the general rule is that, to establish the basis for vacating an award, one must bring forth a record; however, that rule is not universal, and is inapplicable to this case and many others. However, "the application of the general rule merely limits rather than entirely forecloses our consideration of whether the arbitrator exceeded his authority in this instance." *Centex/Vestal v. Friendship W. Baptist Church,* 314 S.W.3d 677, 684-85 (Tex.App.—Dallas 2010, pet. denied), citing *Grand Homes 96, L.P. v. Loudermilk,* 208 S.W.3d 696, 706 (Tex.App.—Fort Worth 2006, pet. denied) (with no record of the arbitration proceedings, the pleadings and the agreement sufficed to conclude arbitrator did not exceed his authority). In *Centex/Vestal* the appellate court distinguished between excess of powers arguments require a review of the evidence in order to rule, and those that require a simpler review, for example the face of the governing contract in order to rule. *Id.* at 685. "Unlike the determination of whether the arbitrator had the *authority* to decide the claims were

within the scope of the agreement, resolution of [the second argument] turns on the evidence offered and considered by the arbitrator . . ." *Id.* at 687. In the instant case, a determination requires review of only the Policy, the FINRA Award, the Final Summary Award and familiarity with the well-established principles of summary judgment.

None of the cases relied upon by Appellee on the issue of the record involved, as this case does, a summary judgment proceeding prior to discovery. Each involved an arbitration on the full merits after discovery, or the opportunity for discovery, and evidentiary hearings had taken place.

In its Response Brief, Appellee discusses a case, *Leshin v. Oliva*, that Appellants have referred the Court to. No. 04-14-00657-CV, 2015 WL 4554333 (Tex.App.—San Antonio July 29, 2015, no pet. h.). However, Appellee fails to provide a meaningful distinction and concedes that "the specific facts of *Leshin* did not require a record other than the arbitration agreement and the award." Appellee's Resp. Br. p. 10-11. Appellants' position on excess of powers, similarly to *Leshin*, requires nothing more than the record that has been provided.

> "Here, the appellate record consists of the arbitration award, the pleadings regarding Leshin's request to vacate the award, and a copy of the trust agreement containing the arbitration agreement. Accordingly, because the scope of the arbitrator's powers is ultimately derived from these documents, we conclude the lack of the arbitration transcript does not preclude this court from considering the merits of Leshin's appeal."

20

*Leshin,* 2015 WL 4554333 at *4.

An appellate court's review "focuses on the integrity of the process, not the propriety of the result." *Schuster,* 2015 WL 251564 at *3 (citing *Centex/Vestal,* 314 S.W.3d at 683). That's exactly what this appeal is about – not the correctness of the result. As such, the appeal does not turn on evidence presented, and – more essentially – the reality is that the evidence on the insurance dispute was never fully aired because there was no discovery and it was thus not fully developed nor presented at a full trial on the merits, rendering such a requirement an impossibility. The Panel's conduct in *excess of powers* is the very cause for the non-existence of such a record.

**Appellee's Response Brief Mischaracterizes Appellants' Argument**

**1. Appellants' Argument is <u>Not</u> that Summary Judgment was Impermissible**

Appellee incorrectly characterizes Appellants' complaint as one over "a procedure they agreed to and participated in," and one that "[they] cannot now complain about . . . ." Appellee's Resp. Br. p. 7. To the contrary, Appellants do not object to the procedural use of the summary judgment in this arbitration, and never have. During a telephonic preliminary scheduling conference that the Panel participated in, Appellants and Appellee agreed to the use of summary judgment to take care of untenable claims at the outset of the AAA proceeding. As such, much of the case law relied upon by Appellee to say that summary judgment is

21

permissible under the AAA Commercial Rules is entirely irrelevant to this appeal. See Appellee's Resp. Br. pgs. 20-22.  Appellee's argument that Appellants have waived the right to seek vacatur based on a complaint about the *use* of summary judgment is also irrelevant.  See Appellee's Resp. Br. pgs. 29-20.

### 2. Appellants' Argument is Not About "Imagined Restrictions" on the Summary Judgment Evidence

Appellee also mistakenly asserts that Appellants' argument for vacatur relies on "imagined restrictions on the evidence the Panel could consider at the summary judgment stage. . . ." Appellee Resp. Br. p. 7.  Appellee argues that to prevail Appellants "must point to evidence of the limitation." Appellee Resp. Br. p. 15. However, this mischaracterizes Appellants' argument, which does not rely on "alleged limitations on the agreed-to summary judgment procedure," but rather on the <u>very nature and well-established tenets of summary judgment</u> itself, which speaks for itself.

Summary judgment may render judgment on claims as a matter of law, but it requires that there must be no genuine issue as to any material fact as to those claims.  TEX. R. CIV. P. 166a; FED. R. CIV. P. 56.  The Panel's task was to separate claims that could be summarily addressed from those that were rife with disputed facts and thus needed to proceed to coverage-specific discovery and a trial on the merits.

22

Appellee correctly points out that both sides submitted documentary evidence in their respective summary judgment briefing.[23] Appellee's Resp. Br. p. 17. As previously discussed, much information was culled from the underlying FINRA proceeding. There was, however, no evidence in the unreasoned FINRA Award that could have established (1) that Woodbury did not approve of, distribute or sell the investment products and that the Asset Protection Plan was outside the scope of Professional Services, nor (2) that its agents acted with a malicious intent or dishonesty (over a period of more than three years) sufficient to exclude coverage as to all products, including the Asset Protection Plan, from coverage. Nor could any information or evidence from the underlying FINRA proceeding even fully inform such considerations, much less serve to establish them. The theories of liability in the FINRA proceeding were entirely different from those in this insurance dispute (see footnote No. 10 herein), which was only at its nascent stages of development. While there was some discussion in the FINRA proceeding, for example, Woodbury's oversight for purposes of vicarious liability, such information is not directly informative to the Policy terms "approval" or "distribution" in this insurance dispute. The elements, standards, theories of liability and recovery do not line up. Simply put, there is no replacement for discovery on the insurance dispute and the FINRA proceeding could inform the

---

[23]    CR:    256 – 278 [Post-Hearing Letter Briefs].

23

findings of the FINRA Award or the existence of genuine issues of fact on the un-explored questions specific to insurance coverage.

Appellee's argument that the use of such evidence – including a series of post-hearing letter briefs, which are in the appellate record – somehow exposes a contradictory position by Appellants must fail. First, the fact that both sides attempted to successfully advocate for a favorable disposition of all of their claims at the summary judgment phase is natural and to be expected in zealous advocacy. Second, the post-hearing letter briefs were initiated, and continued, by the Appellee National Union.[24] Second, the post-hearing letter briefs demonstrate the existence genuine dispute over material facts that went to the insurance coverage dispute.[25]

**Appellee Presents no Applicable Case Law**

The cases relied upon by the Appellee are distinguishable. Few cases actually involve a summary judgment disposition of claims, and are distinguishable from the instant case because either (a) summary judgment was on a legal issue (such as *res judicata* or promissory estoppel), or (b) there was in fact discovery conducted on the contested issues in the arbitration and, as such, the arbitrators could have made a determination that no genuine issue of material fact existed,

---

[24]      CR:      256-257 [First Post-Hearing Letter Brief from National Union, dated Dec. 19, 2014]; 264-266 [Second Post-Hearing Letter Brief from National Union, dated Jan. 9, 2015]; 273 – 275 [Third Post-Hearing Letter Brief from National Union, dated Jan. 30, 2015].

[25]      CR:      256 – 278 [Post-Hearing Letter Briefs].

even if one of the parties disagreed. In such cases, the arbitrators were presented with evidence such as affidavits on issues pertinent to the matters in the case, depositions, expert reports, et cetera. No such evidence was even yet in existence in the instant case, which was at its very nascent stages. The summary judgment findings in this case were fact-specific and concerned coverage issues that had not been considered by FINRA, had not been subject to discovery, and which were under serious dispute. A summary disposition on contested issues of fact, without any discovery, is not supported by the case law or the principles of summary judgment.

Appellee points to *Sherrock Bros.,* which did involve summary judgment, but it was for claims on legal doctrines of *res judicata* and collateral estoppel. *Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC,* 260 F.App'x 497 (3d Cir. 2008). There, an evidentiary hearing was not required "just to find out whether real issues surface," because, as the court noted, "the very rationale behind the dotrines of *res judicata* and collateral estoppel is to preclude the re-litigation of claims and issues that were already decided in an earlier action." *Id.* at 502. Because there were no disputed facts present and the disposition was based on legal doctrines, summary judgment was appropriate. *Id.* at 502. That was not the case here.

*Brooks v. BDO Seidman, LLP*, like *Sherrock*, is distinguishable, although it did involve a summary judgment and a finding of no genuine issue of material fact, even without a full evidentiary hearing. 917 N.Y.S.2d 842, 847 (N.Y. Sup. Ct. 2011). There, discovery on the issue that was subject of the dispute – the reasonableness of fees for forensic accounting services – had occurred and fully developed evidence presented, including affidavits from fact witnesses, expert reports on accounting practices, the reasonableness of the rates, block billing and the failure to turn over work product. *Id.* at 655. The arbitration panel found no material issues of fact that would preclude an award and explained that it was because some of the contested issues were not in actuality *material* to the matter (specifically, some complaints were irrelevant because the obligations of the parties were in the engagement letter, and the documents demonstrated timely completion). *Id.* at 655 - 56.

In contrast, in the instant case, facts on Woodbury 'approval', as well as whether or the agents' intent, are clearly material to coverage questions. Moreover, in the instant case no affidavits, depositions, testimony, or expert reports on the issues of insurance coverage are in existence or presented to the Panel. It was in excess of their powers to make a finding of no genuine issue of material fact on disputed matters before discovery. Appellee points to no case that says otherwise. *see also Brockman v. Tyson*, No. 01-03-01335-CV, 2005 WL

26

2850128 (Tex.App.—Houston [1st Dist.] Oct. 27, 2005) (the arbitration award issued after "having heard all of the proofs, allegations, arguments and authorities of the parties in a hearing on the merits conducted" over the course of four days); *Centex/Vestal*, 314 S.W.3d at 682 (the arbitrators denied a motion for summary judgment and then proceeded to the trial on the merits, which lasted three weeks); *Campbell v. Am. Family Life Assur. Co. of Columbus, Inc.,* 613 F.Supp.2d 1114, 1116 (D. Minn. 2009) (the parties conducted discovery and the plaintiff's summary judgment motion was filed only *after* the close of discovery).

*Schlessinger* is also distinguishable. *Schlessinger v. Rosenfeld, Meyer & Susman*, 47 Cal. Rptr. 2d 650 (Cal. Ct. App. 1995). The arbitrator made a proper determination at summary judgment on a question of law, i.e., the validity of a contractual provision. *Id.* at 1101. However, the arbitrator said "reasonableness" of a levy to be charged was a question of fact that "could not be resolved on the basis of motions and would have to await the taking of evidence." *Id.* at 1101-02. After depositions and discovery on that issue, a second summary judgment motion contended the tolls were unreasonable as a matter of law, based on deposition testimony and expert declarations. Based on the strength of the evidence submitted, tolls were found reasonable as a matter of law because "where a legal issue or defense could possibly be resolved on undisputed facts," there was no requirement for a full-blown trial and summary judgment was appropriate. *Id.* at

27

1103, 1106.  Additionally ,where ", through discovery, the parties have pretrial access to pertinent witnesses and information, a summary adjudication motion may provide an efficient means of evaluating the same evidence that would otherwise be presented at a more time-consuming trial." *Id.* at 1107.   Again, no discovery has taken place on the disputed issues on insurance.

*C. Melchers, GmbH & Co. v. Corbin Associates, LLC,* is also distinguishable. No. 1:05-CV-349, 2006 WL 925056 (E.D. Tenn. Apr. 7, 2006). An initial summary judgment resolved on issue as a matter of law. *Id.* at *4.  The arbitrator did, however, "indicate[] that the parties should be allowed to conduct discovery and attend a hearing on the merits" regarding other matters. *Id.* at *5. After discovery, legal briefing, and a *third* and final hearing the arbitrator eventually determined what turned out to be a "legal issue" based on the law of contracts and certain release language in a settlement agreement, and issued a final award. *Id.* at *5.   These were matters of law.

In the instant case, there was no discovery on the coverage-specific fact issues.   The summary judgment proceeding should have addressed only those matters on which the facts were uncontested or had been addressed by the FINRA proceeding.   The fact-findings by the Panel regarding Woodbury's approval, as well as intent/dishonesty, had not been found by FINRA, were fact issues under intense disagreement, and had not been subject to discovery in the coverage

28

dispute. There is no question that at the instant summary judgment proceeding, a finding of no genuine dispute of material fact **without *any affidavits, any depositions, any testimony, any expert reports, or any evidence whatsoever*** that was specific to the matters essential to the insurance dispute (<u>not</u> to the distinct matters of the FINRA proceeding) was wholly outside of the scope of the powers of the Panel at that juncture.

Contrary to Appellee's claims, a case cited by Appellants – *Chem-Met* – *i*s good precedent and supports vacating the Award. *Chem-Met Co. v. Metaland Int'l, Inc.,* No. 96-02548, 1998 WL 35272368 (D.D.C. Mar. 25, 1998). *Chem-Met* the parties had suggested summary judgment, at a "very early stage in the proceedings," to the arbitrators because it was believed at that point that "perhaps the key facts would be uncontested." The essential facts did not turn out to be agreed upon, however. *Id.* at *3. Nonetheless, prior to the completion of discovery, a summary judgment hearing was held at which no live testimony was presented and no documents were submitted into evidence. The Arbitrators entered an award, but that award was vacated where the district court found that it was improper for the arbitrators to decide the parties' dispute on summary judgment. *Id.* at *2.

> "Here, each party's submissions to the arbitrators were extensively documented and included information touching on all key issues of the dispute. Nonetheless, the Court cannot conclude that the arbitrators here accorded Chem-Met a fundamentally fair hearing.

29

> Even recognizing the need for flexibility in arbitration, it is a bedrock principle that each party must be given a full opportunity to present its case at a hearing on the evidence. The AAA's Rules make it clear that deviation from that principle is only legitimate upon the joint, written agreement of the parties. By deciding the case on summary judgment, the arbitrators denied Chem-Met's rights to present its case in full and to test Metaland's case through cross-examination. Accordingly, the Court finds that the arbitrators' use of that procedure effectively constituted a failure to hear material evidence."

*Chem-Met¸* 1998 WL 35272368 at *4.

## The Panel Exceeded its Authority and Made Improper Fact-findings and Credibility Determinations

The Panel was not permitted to make fact-findings and credibility determinations on essential issues specific to the coverage dispute that had not been considered by FINRA, on which the parties never got to conduct discovery, on which there had been no testimony, and which were under serious dispute. No discovery had taken place specific to the coverage dispute and there were no findings by FINRA on Woodbury's approval nor on fraud, dishonesty or intent, and the issues were under heavy dispute.[26]

As previously pointed out in Appellants' Statement on Admissions by Appellee Supporting Appellants' Position, Appellee's Response Brief itself states that the Panel agreed with National Union that the Asset Protection Plan was not approved by or distributed through Woodbury, and **therefore** does not meet the Policy's Professional Services Requirement." Resp. Brief p. 4. This statement

---

[26]   CR:   256 – 278 [Post-hearing letter briefs].

demonstrates Appellants' point, which is that the Panel, in coming to that conclusion *had to have made an improper fact-finding*. The FINRA Award has no findings or adjudication as to Woodbury, and the FINRA proceeding, while it had addressed – to a very limited degree – issues pertinent to a theory of vicarious liability of Woodbury, such limited amount of information in that proceeding could only serve to show a dispute of material fact, and decidedly <u>not</u> to establish an entirely different set of legal elements in this separate coverage dispute matter.

Appellee's brief also says that the Panel found that the "FINRA panel's award of punitive damages pursuant to the DTPA constitutes a finding of conduct triggering the Dishonesty Exclusion." Appellee's Resp. Brief p. 5. Again, this statement demonstrates an improper fact-finding. The Appellants and Appellee were engaged in a heavy dispute over the proper interpretation of the Dishonesty Exclusion, as well as legal arguments about whether a small sum of punitive damages under the DTPA could even reflect the type of conduct that would trigger the Dishonesty Exclusion.[27] That extracted dispute aside, however, and Appellants' position that the Panel's agreement with the Appellee was itself an improper fact-findings on disputed issues, there is yet still an obvious fact-finding that had to have taken place. That fact-finding involved an assumption by the Panel that any conduct that was the basis for punitive damages occurred in both

---

[27]    CR:    256 – 278 [Post-hearing letter briefs].

2007 and 2004, as to all of the investment products at issue in the FINRA proceeding. The FINRA Award covered three investment products. The Asset Protection Plan was initiated in 2004, while the other two were introduced in 2007. The FINRA Award was <u>unreasoned</u> and did <u>not</u> differentiate between products. The Panel made an improper fact-finding when, based on a small assignment of punitive damages in the FINRA Award, it applied the Dishonesty Exclusion to all investments, and denied coverage across the board, including the 2004 Asset Protection Plan. It did so despite the Appellants' demonstration of material issues of fact as to the agents' intent and honesty in 2004, and before any actual discovery or a hearing was held on the issue.

Summary judgment carries with it implications for the parties' constitutional rights to a trial as well as due process under the Seventh, Fifth, and Fourteenth Amendments. Essentially, through summary judgment procedure, a court is deciding whether or not the case should be dismissed *before* the jury hears the case; and in summary judgments *prior* to discovery, whether it should be dismissed *before* the facts are even fleshed out, such as where the basis for the claim is legally untenable. Such considerations are weighty, and informed by our constitutional rights. In summary judgment, "in a non-jury case . . . . When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her

32

as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010). Appellants, as well as Appellee, presented evidence of genuine issues of material fact,[28] and relied on the future opportunity to conduct discovery on the matters that were not yet adjudicated, aired, or tried.

Moreover, the Panel was required to apply presumptions in favor of Appellants. Because this is an insurance coverage dispute, the Panel was tasked generally to make findings and interpretations in favor of the insured and for coverage. *American Automobile Ins. Co. v. Grimes*, 2004 WL 246989, *4 (N.D. Tex. 2004, no pet.). In the summary judgment, the Panel was also tasked with a presumption in favor of the non-movant. Thus, as to National Union's motion for summary judgment, the Panel was to apply a presumption for Appellants – who were in the insureds' shoes and sought recovery of at least a portion of the $3 million judgment owed – in favor of coverage, in disfavor of no coverage, and in favor of the existence of disputed fact issues. Moreover, National Union because was moving for summary judgment on its affirmative defense of exclusions to coverage, it carried "a particularly heavy burden" to conclusively establish all elements of the affirmative defense. *Cobb v. TDCJ*, 965 S.W.2d 59, 61 (Tex.App.—Houston 1st Dist.] 1998, no writ).

---

[28]    CR:    256 – 278 [Post-hearing letter briefs].

Instead, in spite of the required favorable presumptions for Appellants and the "particularly heavy burden" on National Union, the Panel found in favor of the insurer and against a finding for coverage. The Panel did so based on a finding of no genuine issues of material fact, despite the clear demonstration of their existence and despite the fact that there was no discovery, no evidentiary hearing, and no live testimony on the merits of the insurance claims. Simply because both parties moved for summary judgment did not mean that there could be a resolution a matter of law, and there could still be fact issues that must be tried on the merits. *Calhoun v. Killian,* 888 S.W.2d 51, 54 (Tex.App.—Tyler 1994, writ denied). There had not been an adequate time for discovery – to borrow a term from the Texas Rules of Civil Procedure – on which to even make a finding on these matters, which were clearly under heavy dispute. The Panel acted in excess of their authorized powers by making improper fact-findings in order to unnecessarily force a decision as a matter of law on *all* claims, prior to any discovery. By doing so the Panel deprived Appellants of their due process and of the opportunity, by right, to a full and fair trying of the case.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellants pray that this Court find that the Arbitration Panel acted in excess of its powers when it found that there was no coverage under the Policy for the Asset Protection Plan and to vacate

34

or modify that portion of the Final Summary Award, and remand to arbitration so that coverage of the Asset Protection Plan under the Policy may be assessed after a full evidentiary hearing on the merits.  Appellants further prays for such other relief, whether at law or in equity to which this Court deems they are justly entitled.

Respectfully submitted,

RICHIE & GUERINGER, P.C.


BY:   /s/ *Sheldon E. Richie*
     SHELDON E. RICHIE
     State Bar of Texas No. 16877000
     Email: srichie@rg-austin.com
     EMILY J. SEIKEL
     State Bar of Texas No. 24072331
     Email: eseikel@rg-austin.com
     100 Congress Avenue, Suite 1750
     Austin, Texas 78701
     512-236-9220 telephone
     512-236-9230 facsimile

     ATTORNEYS FOR APPELLANTS

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rules of Appellate Procedure 9.4, the undersigned certifies Appellants' Brief in Reply to Appellee's Brief complies with 9.4.

1. Exclusive of the exempted portions in Texas Rules of Appellate Procedure 9.4(i)(1), Appellants' Brief in Reply to Appellee's Brief contains 7,369 words.

2. Appellants' Brief in Reply to Appellee's Brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2007 in Times New Roman 14 point.

3. The undersigned has provided an electronic version of Appellants' Brief in Reply to Appellee's Brief.

4. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of Texas Rules of Appellate Procedure 9.4, may result in the Court's striking Appellants' Brief in Reply to Appellee's Brief.

*/s/ Emily J. Seikel*
Sheldon E. Richie/Emily J. Seikel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served upon the following parties via electronic mail by the Court's CM-ECF system on this the 22nd day of October 2015, as follows:

Robert S. Harrell
Jon C. Rice
Andrea L. Fair
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

*Counsel for Appellee*

*/s/ Emily J. Seikel*
Sheldon E. Richie/Emily J. Seikel