**CENTEX/VESTAL, a Joint Venture, Appellant,**

v.

**FRIENDSHIP WEST BAPTIST CHURCH, Appellee.**

No. 05–09–00053–CV.

Court of Appeals of Texas, Dallas.

June 10, 2010.

Timothy Dwayne Matheny, Ford White & Nassen, P.C., Dallas, TX, for Appellant.

H. Ron White, Carlos Morales, Eric D. Walker, Kevin B. Wiggins, Adorno Yoss White & Wiggins, LLP, Dallas, TX, for Appellee.

Before Justices RICHTER, MURPHY, and MYERS.

## OPINION

Opinion By Justice RICHTER.

This is an appeal from an order vacating an arbitration award in favor of Centex/Vestal ("Centex") on behalf of its subcontractors under the Texas General Arbitration Act ("TAA"). In two issues, Centex argues the trial court (1) erred in granting Friendship West Baptist Church's (the "Church") motion to vacate because the Church did not meet its burden to show the arbitrator exceeded his authority, and (2) erred in denying the motion to confirm. Because the record does not establish that the arbitrator exceeded his authority under the TAA, we reverse the trial court's order and render judgment confirming the arbitrator's award.

## I. FACTS

### A. The Contract for the Project.

In June 2004, Centex and the Church agreed that Centex would provide labor, equipment, materials, and supervision for the construction of a sanctuary, classroom, and administration building (the "Project"). The agreement was memorialized in a contract (the "Contract") that provides for the resolution of disputes through arbitration administered by the American Arbitration Association. ("AAA").[1] The basis for payment under the Contract is the cost of the work plus a fee, with a negotiated guaranteed maximum price not to exceed $22,599,110 subject to written and approved change orders. Specifically, the Contract provides that if additional time or cost is involved because of clarifications or instructions issued by the architect for the Project, Centex is entitled to make a claim. The claim is subject to review by the architect, who in turn makes a recommendation to the Church concerning its approval.

### B. The Subcontracts.

■ On June 24, 2004, Centex entered into a subcontract with Ennis Steel Industries, Inc. ("Ennis") (the "Ennis Subcontract") pursuant to which Ennis was to perform the fabrication and erection of the structural and miscellaneous steel on the Project, including catwalks. The Ennis Subcontract provides that Ennis is not entitled to receive payment until Centex receives payment from the Church, and this includes payments for changes or additional work. Once Ennis receives payment, it is obligated to pay its subcontractors and suppliers who perform extra work or provide materials that are integrated into the change or extra work. The Ennis Subcontract further provides that Centex may allow Ennis to pursue a pass-through claim against the Church.[2]

Ennis subsequently entered into a subcontract with Choctow Erectors, Inc. ("Choctow") (the "Choctow Subcontract"). The Choctow Subcontract provides that Choctow will perform the erection portion of the steel work on the Project. The Choctow Subcontract also provides that Choctow is bound to Ennis by the same terms Ennis is bound to Centex, and allows Choctow to make a claim for changes. Payment is to be made when the claim for changes is accompanied by a signed work order or "unless otherwise directed by" Ennis.

### C. Claims for Changes.

Several engineering changes were made during the course of the Project, including the elimination of some catwalks, the scaling back of catwalks, the elimination of hangers on the catwalks, and ducting changes to the HVAC system. These changes impacted the scope of Ennis's work as well as the construction schedule. Consequently, on April 22, 2005, Centex provided the Church's representative with formal notice of a request for equitable adjustment under the Contract, and advised that Ennis would be submitting a claim for payment relating to the catwalk portion of the work. On April 22, 2005, Choctow forwarded to Ennis a claim for payment of costs incurred in connection with the steel erection portion of the work.

---

**1.** The Contract is comprised of forms AIA 201–1997 and AIA 111–1997 from the American Institute of Architects.

**2.** A pass-through claim is a claim by a party who has suffered damages against a responsible party with whom it has no contract, presented through an intervening party who has a contractual relationship with both. *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex.2004). Texas recognizes the validity of pass-through claims. *Id.*

On April 25, 2005, Ennis submitted a written claim to Centex for extra compensation and lost productivity related to the catwalk installation. This claim included Choctow's claim. On October 21, 2005, Centex formally submitted Ennis' claim to the Church, and the architect subsequently recommended that the Church deny the claim. The Project was substantially completed in December 2005.

## D. The Joint Defense Agreement.

In December 2006, Centex and Ennis entered into a Joint Prosecution and Defense Agreement (the "Defense Agreement"). The Defense Agreement was later amended to detail the status of Ennis' claim as a pass-through claim and provides in pertinent part:

> It is expressly understood by the parties ... that [Centex] is obligated ... to remit any monies relating to [the claims against the Church] which are received from [the Church] to [Ennis]. [The claims against the Church] are both pass through/liquidated claims and [Ennis] is only entitled to payment of such claims if the claims are paid by [the Church]. To the extent that any portion of [the claims] are satisfied by [the Church], [Centex] is obligated to turn those funds over to [Ennis] in compliance with the Agreement.

## E. The Lawsuits.

On January 19, 2006, Choctow filed suit against Ennis, Centex, and the surety on its payment bond in the 298th District Court of Dallas County seeking the recovery of damages, interest and attorney's fees for uncompensated work that Choctow performed on the Project (the "Choctow Case").

On August 28, 2006, Centex initiated an action against the Church in the 95th District Court of Dallas County requesting foreclosure of a statutory mechanics lien filed against the property of the Church for failure to pay Centex for its services, labor, and materials on the Project (the "Centex Case"). Centex also requested a stay of the litigation pending the completion of arbitration as required by the Contract. The Church did not dispute the validity of the agreement to arbitrate, or challenge whether the claims are within the scope of the agreement. After the Church filed a counterclaim for breach of contract, the trial court signed an order abating and administratively closing the case until arbitration was concluded. The Choctow Case was also administratively closed, and after being reopened, was continued several times pending the conclusion of arbitration.

## F. The Arbitration.

Centex filed a demand for arbitration with the AAA seeking payment of the unpaid balance under the Contract and for the extra work that had been performed on the Project. Centex also filed a specification of claims, which included allegations concerning the pass-through claim brought on behalf of Ennis. The Ennis claim included those amounts claimed by Choctow.

Prior to the arbitration hearing, but within the context of the arbitration, the Church filed a motion for partial summary judgment claiming Centex did not have standing to assert claims on behalf of Ennis and waived its right to assert these claims. The Church also argued that the district court in the Choctow case had dominant jurisdiction over Choctow's claim. The arbitrator denied the motion. The Church then filed an emergency motion to sever the Ennis claim to allow additional time to address discovery issues, and the motion was granted.

Shortly before the commencement of the arbitration of the claims between Centex

and the Church, Centex and the Church entered into a settlement agreement resolving all disputes between them except the Ennis claim. The agreement provides:

> [Centex] ... does hereby release and discharge [the Church] ... from any and all claims, demands, causes of action ... whether or not asserted in the Lawsuit or Arbitration ... arising directly or indirectly out of any events, contracts, transactions or dealings related to the Project, *except* for [Centex's] pass through claim being asserted by Ennis ... as set forth in [Centex's] Specification of Claims in the Arbitration ("Ennis Claim"). **[Centex] expressly reserves the right to pursue the Ennis Claim and excepts the same from this Agreement and Release.**

(Bold emphasis added). The settlement agreement also contains a similar reservation of rights as to the Church's defenses against the Ennis Claim.

Following the execution of the settlement agreement, on May 9, 2008, the Church filed a second motion for summary judgment. In the motion, the Church argued Centex had no standing to pursue claims on behalf of Choctow and the pass-through claim asserted on behalf of Ennis was invalid because there was no assignment. The Church further argued that Centex waived its right to assert the Ennis claim because it failed to provide the Church with timely notice of the claim.

The arbitration proceedings began on May 12, and were conducted in accordance with the Construction Industry Arbitration Rules and Mediation Procedures of the AAA (the "AAA Rules"). Although no record was made of the hearing, the parties agree that the arbitrator denied the Church's second motion for summary judgment during the hearing.

The arbitration was closed on June 2, 2008 and an award in favor of Centex on behalf of Choctow and Ennis as pass-through claimants was signed on July 2, 2008 (the "Award"). The Award specified that $54,472 was recoverable by Centex for Ennis and $246,972 was recoverable by Ennis for Choctow. The Award directed that pre-award interest in the amount of $167,265.83 be apportioned between Ennis and Choctow in accordance with their recoveries. The Award was accompanied by findings of fact and conclusions of law. Significantly, the arbitrator's conclusions of law included the following: (1) Under the provisions of the Ennis Subcontract and the Defense Agreement, Centex remains liable to Ennis and its subcontractors and suppliers for the claim that has been submitted to Centex to be presented to the Church; (2) Under the provisions of the Ennis Subcontract and the Defense Agreement, Ennis has the right and ability to bring a pass-through claim for its damages against the Church through Centex; and (3) Under the Ennis Subcontract, the Defense Agreement, and the Choctow Subcontract, Ennis is still liable to Choctow for its damages and therefore may bring Choctow's claim for damages as part of the Ennis claim. The arbitrator also awarded $18,696.22 to Centex for the portion of arbitration administrative fees and expenses in excess of the apportioned costs previously incurred by Centex, and $100,000 in attorneys' fees.

### G. Vacatur of the Award.

After the delivery of the Award, Centex filed a motion to reinstate the Centex Case and moved to confirm the Award. In response, the Church filed objections to the confirmation and moved to vacate, modify, or correct the Award. Specifically, the Church argued the Award should be vacated because the arbitrator exceeded his powers and manifestly disregarded the law by: awarding damages on the Ennis and

Choctow claims which neither Centex nor Ennis had standing to assert, awarding damages to a non-party to the arbitration, violating public policy that prohibits the imposition of contractual obligations on a non-party to a contract, imperfectly executing the Award by failing to make a "mutual, final, and definitive" award, awarding attorney's fees without allowing an opportunity to contest the evidence and awarding administrative fees and expenses. No record of the arbitration proceeding was presented to the trial court. Instead, the parties attached pleadings and motions from the arbitration as exhibits to the motions filed in the trial court.

The trial court conducted a hearing, after which the court denied the motion to confirm and granted the motion to vacate. An amended order vacating the Award was signed six days later. The amended order vacating the Award specifies that the Award is vacated pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 171.058(a)(3) (Vernon 2005). The Award was vacated in its entirety without remand to the arbitrator for further proceedings.

## II. STANDARD OF REVIEW

 Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and an appellate court reviews the entire record. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex.App.-Dallas 2009, pet. denied); *see also Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567 (Tex.App.-Dallas 2008, no pet.) (discussing standard of review for confirmation of award). Because Texas law favors arbitration, however, our review is "extremely narrow." *See Hisaw & Assoc. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex.App.-Fort Worth 2003, pet. denied); *IPCO–G & C Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255–56 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). An arbitration award has the same effect as a judgment of a court of last resort; accordingly, all reasonable presumptions are indulged in favor of the award and the award is conclusive on the parties as to all matters of fact and law. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex.2002); *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Review of an arbitration award is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex.App.-Dallas 2004, pet. denied).

## III. ANALYSIS

In its first issue, Centex asserts the trial court erred in vacating the arbitration award because the Church failed to meet its burden to establish a statutory or common law ground for vacating the Award. Although the Church argues the trial court vacated the Award based on the TAA and "common law exceptions recognized in Texas," the order vacating the Award does not encompass all grounds the Church suggests. Instead, the trial court specified that the Award was vacated pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 171.058(a)(3). Therefore, our inquiry is confined to the statutory basis for vacatur specified by the trial court.

### A. Standards for Vacating an Award under the TAA.

Under the TAA, a court must confirm an arbitrator's award on application unless an opposing party establishes a statutory ground for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM.CODE ANN. § 171.087 (Vernon 2005); *Quinn v. Nafta Traders, Inc.*, 257 S.W.3d 795, 798

(Tex.App.-Dallas 2008, pet. granted). Section 171.088 provides for vacatur when an arbitrator exceeds his power, refuses to postpone a hearing after a showing of sufficient cause, refuses to hear material evidence, or conducts a hearing contrary to enumerated statutory provisions resulting in substantial prejudice to a party. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(3). "These grounds reflect severe departures from an otherwise proper arbitration process and are of a completely different character than ordinary legal error." *Quinn,* 257 S.W.3d at 798.

■ The vacatur in this case is premised on the trial court's conclusion that the arbitrator exceeded his power. The authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication. *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 327 S.W.2d 406, 408 (1959); *see also Allstyle Coil Co. L.P., v. Carreon,* 295 S.W.3d 42, 44 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (stating scope of authority depends on the agreement). Arbitrators exceed their powers when they decide matters not properly before them. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.,* 294 S.W.3d 818, 829 (Tex.App.-Dallas 2009, no pet.) (citing *Quinn,* 257 S.W.3d at 799); *Barsness v. Scott,* 126 S.W.3d 232, 241 (Tex.App.-San Antonio 2003, pet. denied). When determining whether an arbitrator has exceeded his power, any doubts concerning the scope of what is arbitrable should be resolved in favor of arbitration. *See Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 408 (Tex.App.-Dallas 2007, no pet.). It is only when the arbitrator departs from the agreement, and, in effect, dispenses his own idea of justice that the award may be unenforceable. *See Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). Because arbitration is favored in the law, a presumption of arbitrability attaches once the existence of an arbitration agreement is established. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (per curiam).

**B. Did the Arbitrator Exceed His Authority by Determining the Validity of the Pass–Through Claims and Awarding Damages on the Ennis and Choctow Claims?**

■ Centex contends the Award was not properly vacated because the Church failed to meet its burden to produce a complete record of the arbitration proceeding. Centex also argues that the issues the arbitrator decided fall within the scope of the broad arbitration clause. The Church responds that vacatur was not erroneous because the arbitrator exceeded his authority by determining the validity of the pass-through claims and awarding damages on the Ennis and Choctow claims. Specifically, the Church maintains that neither Centex nor Ennis had standing to assert a claim on behalf of Choctow. The Church also argues the district court in the Choctow Case had "dominant jurisdiction" over Choctow's claims.

■ As the parties correctly note, when a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.-Houston [14th Dist.] 1995, no writ). The general rule is that without an arbitration transcript, we must presume the arbitration evidence adequately supported an award. *Statewide Remodeling,* 244 S.W.3d at 568; *Jamison & Harris v. Nat'l Loan Investors,* 939 S.W.2d 735, 737 (Tex.

App.-Houston [14th Dist.] 1997, writ denied).

But the application of the general rule merely limits rather than entirely forecloses our consideration of whether the arbitrator exceeded his authority in this instance. *See, e.g., Grand Homes 96, L.P. v. Loudermilk,* 208 S.W.3d 696, 706 (Tex. App.-Fort Worth 2006, pet. denied) (noting that there was no record of the arbitration proceeding but considering pleadings and agreement in concluding arbitrator did not exceed his authority). The arbitration pleadings and motions, as well as the Contract containing the agreement to arbitrate are part of our record and were before the trial court when it considered the motion to vacate, and the scope of the arbitrator's authority is derived from these documents. *See Gulf Oil Corp.,* 327 S.W.2d at 408. Therefore, we consider the parties' agreement and the matters submitted in arbitration to determine whether the arbitrator exceeded his power. In so doing, we presume any remaining evidence supports the Award. *See Glenn A. Magarian, Inc. v. Nat'l Fin. Corp.* No. 05–97–0063–CV, 1999 WL 814289, at *2 (Tex.App.-Dallas, Oct. 13, 1999, pet.denied) (not designated for publication) (stating if appellant brings a record showing only a portion of arbitration proceedings court presumes the remaining evidence supports the award).

 The Contract provides that "[a]ny claim arising out of or related to the Contract" is subject to arbitration.[3] The Contract further states that "[n]o arbitration shall include, by consolidation or joinder or in any other manner, parties other than the [Church], [Centex], a separate contractor as described in Article 6 or other persons substantially involved in a common question of fact or law or whose presence is required if complete relief is to be accorded in arbitration."[4] Both of these phrases are broad and encompass a wide range of disputes. When an arbitration clause employs broad language such as this, it is construed as evidencing the parties' intent to be inclusive rather than exclusive. *See Pepe Intern. Devel. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 930 (Tex.App.-Houston [1st Dist.] 1996, no writ). Further, the presumption of arbitrability is particularly applicable where there is a broad arbitration clause that purports to cover all claims and disputes. *See McReynolds v. Elston,* 222 S.W.3d 731, 740 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Because of the breadth of the arbitration clause, we conclude that the arbitrator was authorized to determine that the Ennis and Choctow claims arose out of or related to the Contract or involved a common question of law or fact. *See Hisaw & Assoc. Gen. Contractors, Inc. v. Cornerstone Concrete Sys. Inc.,* 115 S.W.3d 16, 16 (Tex.App.-Fort Worth 2003, pet. denied); *Island on Lake Travis, Ltd. v. Hayman Co. Gen. Contractors,* 834 S.W.2d 529, 532 (Tex.App.-Austin 1992, writ granted, judgm't vacated w.r.m.). In reaching this conclusion, we note that when, as here, there is a broad arbitration clause, arbitration of a particular claim should not be denied unless it can be said "with positive assurance that the arbitration clause is not susceptible of an inter-

3. The Contract provides that arbitration will be conducted in accordance with the AAA Rules, and the AAA Rules provide that the arbitrator has the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. But there is no indication that the AAA Rules were before the trial judge when she considered the motion to vacate.

4. In essence, Article 6 provides that the Church may award separate contracts to different contractors in connection with other portions of the Project.

pretation that covers the asserted dispute." *Kline v. O'Quinn,* 874 S.W.2d 776, 782 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

■■■■ The authority of arbitrators is also derived from the matters submitted for determination. *See City of Baytown v. C.L. Winter, Inc.,* 886 S.W.2d 515, 518–19 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (considering scope of arbitration pleadings and parties' agreement to determine whether arbitrator exceeded his authority); *Island on Lake Travis,* 834 S.W.2d at 533. Arbitrators do not exceed their authority when the matter addressed is one which the parties agreed to arbitrate. *See Pheng,* 196 S.W.3d at 329–330. Paradoxically, the Church submitted for the arbitrator's consideration the very issues it now insists the arbitrator lacked the authority to decide. First, the Church requested that the arbitrator rule on the issues of standing and the validity of the pass-through claims in the two motions for summary judgment it filed. Then, the Church participated in a four-day arbitration involving the same issues. Indeed, in its brief on appeal, the Church conceded that it "looked to the arbitrator first on the issue of standing and jurisdiction because the issues are inextricably intertwined with the scope of the arbitrator's authority." The notion of submitting the issues to the arbitrator *first* implies that some type of merits-based review may follow in the event of an adverse ruling. In the context of arbitration, however, there is no second bite at the proverbial apple. A party cannot submit an issue to the arbitration panel and then, when an unfavorable result occurs, claim the arbitrators exceeded their authority in deciding the issue. *Island on Lake Travis,* 834 S.W.2d at 533. An arbitrator's award on matters properly submitted to him is entitled to the same effect as a judgment of a court of last resort. *See CVN Group,* 95 S.W.3d at 238.

■■■■ The Church also contends Texas law does not allow pass-through claims made against an owner by a subcontractor's subcontractor. According to the Church, in the absence of an assignment, there is no legal basis to permit Ennis or Centex to prosecute Choctow's claims. Although the Church's argument is couched in terms of whether the arbitrator exceeded his authority, the Church's argument is really a complaint that the arbitrator committed an error of law. But a complaint that the arbitrator decided the issue incorrectly or made a mistake of law is not a complaint that the arbitrator exceeded his powers. *See Pheng Invs. Inc. v. Rodriguez,* 196 S.W.3d 322, 329 (Tex.App.-Fort Worth 2006, no pet.). A reviewing court is not at liberty to substitute its judgment for that of the arbitrator's merely because it would have reached a different decision. *Statewide Remodeling,* 244 S.W.3d at 568. In our evaluation of the Church's argument, we are mindful of other courts' caution against a party's "use of the authority argument as a ruse to induce the reviewing court to redetermine the facts—even just a tiny bit—or reach a legal conclusion on them as found or hoped for which differs from that of the arbitrators'." *Island on Lake Travis,* 834 S.W.2d at 533 (citations omitted).

Having reviewed the arbitration clause in the Contract and the written submissions in arbitration, indulging all reasonable presumptions in favor of the Award, we cannot conclude the arbitrator exceeded his power by determining issues that were not properly before him.

**C. Did the Arbitrator Exceed His Authority by Awarding Fees and Expenses?**

■■ The Church also argues the arbitrator exceeded his authority by awarding

attorney's fees to Ennis. In particular, the Church contends the fees are not properly recoverable because the Ennis claims were not within the scope of the arbitration agreement and the evidence supporting the fees was not offered until the close of the proceeding, depriving the Church of an opportunity for rebuttal. The Church further maintains that the award of arbitration fees and expenses was not proper because arbitration fees and expenses were encompassed in the settlement agreement between Centex and the Church. Centex responds that the Church's statements about the arbitration proceeding are misleading and cannot be evaluated in the absence of a transcript of the proceeding.

We have previously concluded that the arbitrator had the power to determine that the Ennis claims were within the scope of the agreement, and therefore reject the Church's challenge of the fees on this basis. As for the remainder of the Church's argument, we agree with Centex that the Church's failure to bring forth a complete record of the arbitration proceeding is fatal to this asserted basis for vacatur. *See Jamison & Harris,* 939 S.W.2d at 737 (refusing to review challenge to arbitrator's evidentiary rulings without an arbitration record); *Kline v. O'Quinn,* 874 S.W.2d at 783 (presuming adequate evidence to support award where no record to show claims submitted or evidence offered). Unlike the determination of whether the arbitrator had the authority to decide the claims were within the scope of the agreement, resolution of this issue turns on the evidence offered and considered by the arbitrator and the manner in which the arbitration proceeding was conducted, none of which is included in the record before us. Therefore, on the face of this record, we cannot conclude the arbitrator exceeded his authority by awarding fees and expenses. Centex's first issue is sustained.

### D. Denial of the Motion to Confirm.

In its second issue, Centex argues the trial court erred in denying its motion to confirm the Award.[5] We agree. A court must confirm an arbitrator's award on application unless an opposing party establishes a statutory ground for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM.CODE ANN. § 171.087. Because the Church failed to establish a basis for vacating the Award, the trial court erred in denying the motion to confirm. Centex's second issue is sustained.

### IV. CONCLUSION

Because we conclude the trial court erred in vacating the Award and denying the motion to confirm, we reverse the trial court's judgment and render judgment confirming the arbitrator's award.

---

5. Although Centex describes its second issue in terms of whether the trial court "exceeded its authority," we construe the argument to assert the trial court's decision was in error.