**Affirmed; Opinion Filed November 17, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01232-CV

## BRAD HERRIAGE AND LOGISTICS SOLUTIONS INTL., LLC, Appellants
## V.
## BNSF LOGISTICS, LLC, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-07547**

# MEMORANDUM OPINION

Before Justices Francis, Myers, and Whitehill
Opinion by Justice Myers

Appellants Brad Herriage and Logistics Solutions International (LSI) appeal the trial court's order confirming an arbitration award in favor of appellee BNSF Logistics (BNSF). In four issues, appellants contend the trial court erred by confirming the award because of lack of notice; the "ex parte" arbitration substantially prejudiced the rights of Herriage and LSI; and no return receipt of notice for arbitration was obtained by the arbitrator, the American Arbitration Association, or BNSF, as required by controlling statutes. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

BNSF is a third-party logistics company providing transportation services by road, rail, water, and air. Herriage is the owner of LSI. On July 24, 2013, Herriage and LSI entered into a limited and particular purpose agency agreement (the "agreement") with BNSF. Both BNSF and Herriage, individually and on behalf of LSI, signed the agreement. The agreement was for a

one-year term that would "be renewed for a duration of one year, if neither party provides to the other 'notice of permitting expiration' of at least forty-five (45) days prior to the expiration," and could terminate "at any time with no fewer than thirty (30) days written notice to the other." The "Dispute Resolution and Arbitration" section of the agreement, section 12, provided that any unresolved dispute must be submitted to arbitration in accordance with the commercial rules of arbitration of the American Arbitration Association (AAA).

The agreement further provided that "[t]he terms and conditions of this AGREEMENT will begin on <u>October 18, 2012</u> and, unless terminated by Agency or Broker, shall conclude one year later, on <u>October 17, 2012</u> (the 'expiration'). . . ." Because, however, the agreement was not signed until July 24, 2013, it could not have become effective in October 2012. In addition, the agreement could not expire before its term even began. We therefore agree with appellees that this provision contains a typographical error. And as shown in the record, appellants continued to do business with BNSF until 2015, undermining any contention that the agreement terminated in 2013.

BNSF claimed appellants breached the agreement and sent a demand letter dated September 24, 2015, to Herriage and LSI by certified mail demanding they cease engaging in conduct that violated their obligations under the agreement. BNSF further alleged it had paid appellants a commission on shipments for which BNSF never received payment from the customer, requiring appellants to refund the corresponding commissions to BNSF under the agreement. Herriage and LSI refused to accept the demand letter, but someone wrote "kiss my ass" and "refused" on the envelope that was returned to BNSF's counsel. Herriage denied writing anything on the envelope.

In December of 2015, BNSF instituted arbitration proceedings against appellants arising out of their alleged breaches of the agreement. In accordance with the agreement, BNSF sent a

–2–

copy of the demand for arbitration to Herriage and LSI by electronic mail and by regular and certified mail. On December 15, 2015, the AAA sent correspondence to BNSF's counsel and to appellants acknowledging receipt of the demand for arbitration.

Appellants having failed to respond or object regarding the location requested by the claimant or the AAA's choice of arbitrator, the AAA confirmed the selection of Dallas as the location for the arbitration and Steven K. DeWolf as the arbitrator. Following a preliminary conference, the arbitrator issued a February 26, 2016 scheduling order notifying the parties that the arbitration would take place on May 4, 2016, in Dallas, Texas. The scheduling order stated that appellants, although "properly notified" of the preliminary conference, "chose not to attend," and it was transmitted to Herriage via electronic mail to the email address brad@lsiworld.com.

On March 1, 2016, over two months before the May 4th arbitration hearing, the AAA sent notices of the hearing to Herriage via both electronic mail to the email address brad@lsiworld.com and certified mail to the address 1150 Mason Street, Lantana, Texas 76226, which is the address listed in the agreement. On April 28, 2016, six days before the hearing, the AAA sent an additional reminder of the hearing date to Herriage via electronic mail to the email address brad@lsiworld.com and first class and certified mail to the 1150 Mason Street address.

Herriage testified that 1150 Mason Street was his residential address. Herriage subsequently moved, but he received forwarded mail at the new address and he testified that he received notice of the hearing at least the day before the hearing. Herriage recalled that a man delivered the notice and he "had to sign for it." Appellants' verified answer likewise states that Herriage received notice of the hearing on the evening before, on May 3, 2016. Herriage testified that he chose not to appear at the May 4th hearing or to contact anyone and ask for more time or ask for a new hearing.

On May 4, 2016, the arbitrator held the arbitration hearing in Dallas and, on that same

–3–

day, entered a final award in favor of BNSF. The arbitrator granted an award of $24,811.45 in damages, $26,213 in attorneys' fees, $8,715.21 in costs and expenses, including AAA fees, and an injunction prohibiting Herriage and LSI from violating their non-compete and non-solicit obligations under the parties' agreement for one year from the date of the final award. The award recited that "[a]lthough Respondents received notice of the hearing by e-mail and certified mail, confirmed by a certified mail delivery receipt, they did not appear."

Two days later, on May 6th, BNSF requested via email that the arbitrator modify the original award to (1) reduce the costs awarded by $1,268.50 in light of the partial reimbursement by the AAA of certain fees paid by BNSF; and (2) increase the attorneys' fees award by $377 to properly account for the attorney's fees incurred by BNSF through the hearing. BNSF copied appellants on that email and sent the e-mail to the brad@lsiworld.com email address. The AAA responded and again copied appellants via e-mail to that same email address.

On June 8, 2016, the arbitrator reduced the amount of arbitration costs but did not increase the award of attorneys' fees. The AAA transmitted the modified final award to appellants via e-mail to the brad@lsiworld.com email address and first class and certified mail to the 1150 Mason Street address. BNSF then filed suit to confirm the award. Following appellants' verified answer and motion to vacate the award, BNSF filed a first amended application to confirm the award.

The trial court held a hearing on September 19, 2016, on BNSF's motion to confirm the award and appellants' motion to vacate. At the hearing, Herriage confirmed that "brad@lsiworld.com" was the correct email address. But he explained that he had not conducted business from that email address in approximately one year, and that he never closed the account and "just didn't check it." Asked whether there could have been "numerous emails" from the AAA in that email box, Herriage said, "There may be 10,000 emails. I don't know."

Granting BNSF's motion to confirm the award, the court explained its reasons in part as follows:

> The only basis for vacating is improper notice. Mr. Herriage says that the address was correct. The address to which documents were sent by the ADA—AAA. That the e-mail address was correct. He just chose not to look at the e-mail. Still may have thousands of letters in there.
>
> Clearly the address was good enough that he did receive at least one certified, but he doesn't tell us how many other members of the family may have received mail. All he says is that he did not. I think the final award statement that notice was sent and was confirmed by certified mail delivery receipt is sufficient evidence that there was a certified mail receipt received by the arbitrator, and I think that that is what's required. So I am not suggesting that there is a misstatement of truth. What I'm suggesting is Mr. Herriage specifically says he just didn't check his e-mail, and he didn't obviously check all of his regular mail or certified mail. So I think he fails to carry his burden to show that he was not properly noticed; therefore, there's no basis for setting aside the arbitration and consequently I affirm the arbitration.

The trial court also issued a written order denying the motion to vacate the award and granting the motion to confirm the award. Appellants filed a notice of appeal from the trial court's order.

## STANDARD OF REVIEW AND APPLICABLE LAW

Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and an appellate court reviews the entire record. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied); *see also Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567 (Tex. App.—Dallas 2008, no pet.). Because Texas law favors arbitration, however, our review is "extremely narrow." *See Centex/Vestal*, 314 S.W.3d at 683; *Hisaw & Assoc. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex. App.—Fort Worth 2003, pet. denied); *IPCO–G & C Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255–56 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An arbitration award has the same effect as a judgment of a court of last resort; accordingly, all reasonable presumptions are indulged in favor of the award and the award is conclusive on the

parties as to all matters of fact and law. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Centex/Vestal*, 314 S.W.3d at 683; *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Review of an arbitration award is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award. *Centex/Vestal*, 314 S.W.3d at 683; *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied). This deference is intended to prevent disappointed litigants from seeking "to overturn every unfavorable arbitration award in court." *Hazar*, 124 S.W.3d at 429. Based upon the extremely narrow and deferential appellate review, "'"[d]isputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between.'"" *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist. 2003, pet. denied) (quoting *Gupta v. Cisco Sys., Inc.*, 274 F.3d 1, 3 (1st Cir. 2001) (quoting *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 10 (1st Cir. 2001))).

Under the Texas General Arbitration Act, a court must confirm an arbitrator's award on application unless an opposing party establishes a statutory ground for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM. CODE ANN. § 171.087; *Centex/Vestal*, 314 S.W.3d at 683. Section 171.088 of the civil practice and remedies code states, in part, that an arbitration award shall be vacated "if . . . the arbitrators . . . conducted the hearing contrary to Section 171.043, 171.044, 171.045, 171.046 or 171.047, in a manner that substantially prejudiced the rights of a party . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(D). Appellants bear the burden of establishing one of the statutory grounds for disturbing the award. *Hazar*, 124 S.W.3d at 430 (citing TEX. CIV. PRAC. & REM. CODE § 171.093). Section 171.044 provides in part as follows:

> (a) Unless otherwise provided by the agreement to arbitrate, the arbitrators shall set a time and place for the hearing and notify each party.

(b) The notice must be served not later than the fifth day before the hearing either personally or by registered mail with return receipt requested. Appearance at the hearing waives the notice.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.044(a)–(b).

## DISCUSSION

## 1. The May 4, 2016 Final Award

In their first issue, appellants contend the trial court erred by confirming the May 4, 2016 arbitration award because of lack of notice. In their fourth issue, appellants argue that no certified mail "return receipt" or "green card" of the notice for arbitration was obtained by the arbitrator, AAA, or BNSF, as required by law. *See id.* § 171.044(b). We will address these issues together.

Appellants argue the arbitration held on May 4th was void for being held "ex parte" because statutory notice was not provided in accordance with section 171.044, which requires that notice must be served not later than the fifth day before the hearing, either personally or by registered mail with return receipt requested. *See id*. § 171.044(b). Appellants assert that nothing in the record shows the arbitrator or the AAA actually provided notice by registered mail of the May 4th hearing—no return of service or "green card" for the notice was filed and no one with personal knowledge of service testified. Appellants further argue that the AAA–provided notice was ineffective because the statute states that the "the *arbitrators* shall set a time and place for the hearing and notify each party," *see id*. § 171.044(a) (emphasis added), but there is no evidence that the AAA employee who sent the notices was acting as an agent for the arbitrator. Appellants also argue that the purported lack of notice violated their due process rights.

Due process generally requires that notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the

—7—

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). But "[t]he Due Process Clause does not mandate the parties be heard at the arbitration hearing; rather, the Due Process Clause requires that the parties be given a meaningful opportunity to be heard at the arbitration hearing." *Ewing v. Act Catastrophe–Tex. L.C.*, 375 S.W.3d 545, 551 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see Univ. of Tex. Med. School v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). In the arbitration context, Texas courts have held that where the arbitrators attempt to notify parties of an arbitration hearing at the address provided in the arbitration agreement in compliance with the applicable statutes or agreed-upon arbitration procedures, such attempted notice, even if unsuccessful, comports with due process. *See, e.g.*, *Brozo v. Shearson Lehman, Hutton, Inc.*, 865 S.W.2d 509, 511–12 (Tex. App.—Corpus Christi 1993, no writ) (service on party's former attorney who had not formally withdrawn was sufficient to satisfy due process concerns because it was "reasonably calculated to apprise the party of the suit"); *Venture Cotton Co-op v. Neudorf*, No. 14–13–00808–CV, 2014 WL 4557765, at *5 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, no pet.) (mem. op.) (affirming trial court's decision confirming an arbitration award and noting that due process "is satisfied when notice procedures are followed in compliance with the rules under which the parties agreed to be bound"); *Ying Chun Tan v. Hung Pin Lee*, No. 14–06–00319–CV, 2007 WL 582084, at *4 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.) (rejecting argument that attempted notice failed to satisfy due process because the notice complied with the arbitration rules consented to by the parties).

Here, the parties agreed in section 12 of the agreement that any and all unresolved disputes or controversies relating to or arising out of the agreement would "be submitted to arbitration in accordance with the Commercial Rules of Arbitration of the American Arbitration Association." Rule 24 of the AAA's Commercial Arbitration Rules provides in part that "[t]he

AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties." *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *R-24: Date, Time and Place of Hearing* (eff. Oct. 1, 2013), available at https://www.adr.org/Rules. Where parties consent to certain arbitration rules, those rules govern the notice requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.044(a) ("*Unless otherwise provided by the agreement to arbitrate*, the arbitrators shall set a time and place for the hearing and notify each party.") (emphasis added); *see also Tan*, 2007 WL 582084, at *2 (where the parties agreed to proceed under the National Association of Securities Dealers Code of Arbitration Procedure that contained rules governing notice, compliance with those rules was sufficient). Furthermore, due process is satisfied when notice procedures are followed in compliance with the rules under which the parties agreed to be bound. *See Mullane*, 339 U.S. at 314; *see also Saks v. Rogers*, No. 04–16–00286–CV, 2017 WL 3159712, at *9 (Tex. App.—San Antonio July 26, 2017, no pet.) (mem. op.); *Venture Cotton Co-op.*, 2014 WL 4557765, at *5. "If a party's absence at the arbitration hearing is the result of her decision not to attend, there is no due process violation." *Ewing*, 375 S.W.3d at 552.

The record shows the AAA sent notice of the May 4th arbitration hearing to appellants on two occasions via both electronic and certified mail—one was approximately two months before the hearing; the other six days before the hearing. The written notices were sent to the physical address listed in the agreement, and the electronic notices were sent to an email address that Herriage admitted he conducted business from in the past but that he no longer bothered to check and had never closed. As the trial court pointed out when it confirmed the arbitration award, Herriage acknowledged there could have been thousands of unread emails from the AAA in the email account; he did not know. In addition, the final award recited that "[r]espondents received notice of the hearing by e-mail and certified mail, confirmed by a certified mail delivery receipt."

Moreover, Herriage admitted he had notice of the arbitration hearing, albeit on the evening before, and chose not to attend. *See id.* Because appellants agreed to be bound by the AAA's Commercial Arbitration Rules and the record shows the AAA complied with the notice requirement, appellants' due process argument fails.

For these same reasons, appellants' reliance on the fact that a AAA employee, rather than the arbitrator, sent the written notice is unpersuasive. To begin with, appellants did not argue in the trial court that notice by the AAA instead of the arbitrator rendered the notice ineffective, indicating this argument was not preserved. *See* TEX. R. APP. P. 33.1(a)(1). Assuming, however, that the argument was preserved for appellate review, the AAA's rules provide that the AAA shall send the notice of the hearing to the parties, and the record shows such notice was provided. Although it was the AAA that sent the notices, the scheduling order containing the hearing date was included in notices sent to appellants. Appellants assert that the AAA was not acting as the arbitrator's agent, but they provide no authority for this argument and, in any event, the record undercuts the argument because the scheduling order was prepared by the arbitrator, whom the AAA appointed. We further conclude that appellants' reliance on case law discussing service under the Texas Rules of Civil Procedure is unconvincing because those cases do not apply where, as in this case, the parties agreed to rely on the AAA's Commercial Arbitration Rules. *See Hazar*, 124 S.W.3d at 432 n. 10.

As for appellants' argument that there is no certified mail "return receipt" or "green card" in the record, the final award recited that although appellants received notice of the hearing by email and certified mail, confirmed by a certified mail delivery receipt, they did not appear. Texas law provides that all reasonable presumptions are indulged in favor of an arbitration award, and none against it. *See Statewide Remodeling,* 244 S.W.3d at 568 (an arbitration award has same effect as a judgment of a court last resort); *Brozo*, 865 S.W.2d at 511 (holding notice

–10–

was proper under arbitration association's rules and concluding that "[t]hough the record does not show that the [arbitration association] sent th[e] notice by registered or certified mail, the arbitrators, interpreters of the [arbitration association's] rules, apparently found the notice provided satisfied [the rule in question] because they conducted the hearing and ruled for [one party]"); *KNJ Enters., Inc. v. Wilbanks & Wilbanks*, *P.C.*, No. 14–14–00271–CV, 2015 WL 1736400, at *5 (Tex. App.—Houston [14th Dist.] Apr. 14, 2015, no pet.) (mem. op.) (rejecting argument that party did not receive notice of arbitration hearing because "[t]he arbitrator determined that [the party] received proper notice of the arbitration."). Moreover, as discussed more fully below, without a transcript of the arbitration proceedings we are required to presume the evidence adequately supported the arbitration award. *See Statewide Remodeling*, 244 S.W.3d at 568. We therefore overrule appellants' first and fourth issues.

## 2. The June 8, 2016 Modification of the Final Award

In their second issue, appellants contend the trial court erred by confirming the final award because of a lack of notice of BNSF's request to modify the original award. Appellants also argue the arbitrator's modification was impermissible because it "was not based on a miscalculation of figures or an evident mistake in description."

The record shows BNSF requested via email that the arbitrator modify the original award to reduce the amount of arbitration costs and increase the attorneys' fees award. BNSF copied appellants on that email to the email address brad@lsiworld.com, and Herriage testified he had conducted business from that email address in the past but had not checked it for approximately one year and never closed the account. The arbitrator reduced the fees and expenses awarded but declined BNSF's request for additional attorneys' fees. In a June 8, 2016 email to the AAA's manager of ADR services, the arbitrator explained he did "not have the authority to modify the amount of attorneys' fees based on new evidence. The hearing was closed and my authority only

–11–

extends to making modifications based on calculation errors." The modified award found that appellants failed to respond, and the arbitrator did not issue the modification until over thirty days after BNSF requested the modification. We conclude the record shows appellants failed to respond despite being notified of the requested modification. Accordingly, they cannot now complain about lack of notice when the record shows they received notice of BNSF's requested modification and failed to respond.

As for appellants' argument that the arbitrator's modification was impermissible, it is worth noting that BNSF sought to modify the original award to *reduce* the total amount of the award, not increase it. Additionally, the arbitrator's modification of the original award to reduce the amount of arbitration fees and expenses awarded to BNSF was proper because the Texas Civil Practice and Remedies Code permits an arbitrator to modify or correct an award (1) "on the grounds stated in Section 171.091;" or (2) "to clarify the award." TEX. CIV. PRAC. & REM. CODE ANN. § 171.054(a). Section 171.091 provides that, on application, the court shall modify or correct an award if:

(1) the award contains:

(A) *an evident miscalculation of numbers*; or

(B) an evident mistake in the description of a person, thing, or property referred to in the award;

(2) the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or

(3) the form of the award is imperfect in a manner not affecting the merits of the controversy.

*Id*. § 171.091(a) (emphasis added).

The correction of "clerical, typographical, or computational errors" in the arbitration award is permissible. *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *R-50: Modification of Award* (eff. Oct. 1, 2013), available at

–12–

https://www.adr.org/Rules ("Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award."). When a trial court modifies an award to correct the arbitrator's omission of prejudgment interest in the final calculations, the modification has been held to be permissible. *See Sydow v. Verner, Liipfert, Bernhard, McPherson & Hand, Chartered*, 218 S.W.3d 162, 170 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (allowing addition of pre-judgment interest because arbitrator "clearly intended" to include this in original award); *Baker Hughes Oilfield Ops., Inc. v. Hennig Prod'n Co.*, 164 S.W.3d 438, 446–47 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (trial court did not resort to speculation when it corrected award to include date pre-judgment interest began to accrue because arbitrator intended to award pre-judgment interest). When, however, the trial court tries to modify the award to include attorneys' expenses, it exceeds the scope of the modification. *Sydow*, 218 S.W.3d at 169–70; *see also, Barsness v. Scott*, 126 S.W.3d 232, 239 (Tex. App.—San Antonio 2003, pet. denied) (inclusion of indemnity award was an impermissible modification).

In this case, the arbitrator intended to award BNSF the amount of arbitration costs attributable to appellants and that were due under the agreement, which included a provision awarding filing fees and the costs of the arbitration to the prevailing party. The arbitrator did not add damages or remedies when he modified the original award—he *reduced* the total amount awarded. In modifying the original award to include the actual costs incurred by BNSF, which were less than what was originally awarded, we conclude the arbitrator made a computational correction that was permitted under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.054(a), 171.091(a); *Sydow*, 218 S.W.3d at 170; *Baker Hughes Oilfield Ops., Inc.*, 164 S.W.3d at 446–47. We overrule appellants' second issue.

### 3. Substantial Prejudice

In their third issue, appellants argue the "ex parte" arbitration substantially prejudiced their rights "for enforcing a contract which had expired eight to ten months prior to the claim against them."

Appellants had the burden of establishing that the alleged lack of notice substantially prejudiced their rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3) (requiring a showing that the arbitrator conducted the hearing contrary to section 171.044 "in a manner that substantially prejudiced the rights of a party"). As we have already concluded, however, the record shows appellants received adequate notice of the arbitration hearing and failed to attend, so we need not reach this question.

Furthermore, appellants did not meet their burden. "When a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award." *Statewide Remodeling*, 244 S.W.3d at 568. When, as in this case, there is no transcript of the arbitration hearing, we presume the evidence was adequate to support the award. *See id.*; *Henry S. Miller Brokerage, LLC v. Sanders*, No. 05–14–01618–CV, 2015 WL 4600218, at *3 (Tex. App.—Dallas July 31, 2015, no pet.) (mem. op.); *Goldman v. Buchanan*, No. 05–12–00050–CV, 2013 WL 1281744, at *2 (Tex. App.—Dallas Mar. 21, 2013, no pet.) (mem. op.). "Many Texas courts have held that without a complete record of the evidence presented to the arbitrator at the arbitration proceedings, there can be no appellate review of the arbitrator's decision." *Statewide Remodeling*, 244 S.W.3d at 568. In addition, a counsel's statements regarding what occurred at the hearing do not substitute for a record of those proceedings. *See id.* at 569; *Henry S. Miller Brokerage*, 2015 WL 4600218, at *3. Hence, we cannot say the trial court erred in confirming the arbitration award, and we overrule appellants' third issue.

We affirm the trial court's judgment.

161232F.P05

/Lana Myers/
LANA MYERS
JUSTICE

# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BRAD HERRIAGE AND LOGISTICS
SOLUTIONS INTL., LLC, Appellants

No. 05-16-01232-CV      V.

BNSF LOGISTICS, LLC, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-07547.
Opinion delivered by Justice Myers. Justices
Francis and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.  It is **ORDERED** that appellee BNSF LOGISTICS, LLC recover its costs of this

appeal from appellants BRAD HERRIAGE AND LOGISTICS SOLUTIONS INTL., LLC.

Judgment entered this 17th day of November, 2017.